Barbara SHERES, Plaintiff,

v.

Stuart M. ENGELMAN, Defendant.

Civ. A. No. H–78–572.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 12, 1982.

---

Ronald H. Tonkin, Houston, Tex., for plaintiff.

Larry Sauer, Sauer & Hormachea, Houston, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

McDONALD, District Judge.

Plaintiff instituted this action to enforce a separation agreement which was incorporated but not merged into a divorce decree entered by the Supreme Court of the State of New York on February 20, 1970. This Court has jurisdiction under 28 U.S.C. § 1332. Defendant maintains that the New York decree was modified and superseded by a subsequent support decree issued by the 166th District Court of Bexar County, Texas, on October 10, 1974. The parties have stipulated to the facts and submit the case to the court on the pleadings for resolution of the question of the effect of the Texas order on the New York divorce decree.

The facts may be stated as follows. Plaintiff and defendant were divorced by a Final Judgment entered by the Supreme Court of the State of New York on February 20, 1970. Under the terms and conditions of the judgment, the parties executed a written Separation Agreement dated February 18, 1970, governing the custody, visitation, and support of their two children Brian, born November 29, 1952, and Peter, born January 21, 1957.[1]

The Separation Agreement gave plaintiff custody of the two children and gave defendant the duty of child support and visitation privileges. It provided that defendant pay $75.00 per week in child support for each child until the child reached the age of twenty-two, except that payments would cease if the child were not a full-time matriculated student in good standing at a college or other accredited school at the age of eighteen or any time thereafter. From the date of judgment until June 15, 1973, defendant paid the plaintiff $75.00 per week per child for the support and maintenance of each of his two children as required by the divorce judgment. On June 15, 1973, defendant ceased all payments. At that time Brian was twenty years old and in college and Peter was sixteen years old.

Almost a year later, in May 1974 plaintiff filed a Petition for Support in Florida, and the 166th District Court of Bexar County, Texas, pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA), Tex.Fam.Code Ann. § 21.01 et seq. (Vernon 1980), entered a Reciprocal Support Order on October 10, 1974. The order found a

---

1. The children's last name has since been changed to Sheres.

substantial and material change of circumstances and reduced both future payments and arrearages. It required defendant to pay plaintiff $100.00 per month in child support until Peter reached eighteen and $3,000 in arrearages at the rate of $100.00 a month thereafter.[2] The order did not refer to the original order or state whether or not it superseded it. Plaintiff did not appeal the order. Defendant subsequently paid the Bexar County court $2,500: $400 for support of Peter until his eighteenth birthday and $2,100 for past due support. Thus, he is in arrears on that Texas court's order in the amount of $900.00.

On March 30, 1978 the plaintiff instituted this action seeking to enforce the New York judgment and support order, notwithstanding the purported modification of support payments by the Bexar County court. She seeks $23,225 in arrearages as of this date, the amount calculated as due under the New York order less the amounts defendant paid to the Bexar County court.

Plaintiff moved for summary judgment on November 13, 1978 on the grounds that this Court should give the New York judgment full faith and credit. The motion was referred to a United States Magistrate. The magistrate concluded that the Bexar County court order is *res judicata* as to arrearages owed by defendant to plaintiff as of the date of the order, and that it cannot be collaterally attacked because the court had jurisdiction. This Court denied plaintiff's motion for summary judgment on February 5, 1980. Following the magistrate's analysis and conceding that the Bexar order might be *res judicata* as to arrearages it noted that the effect of the Bexar County court order depended on which sections of URESA plaintiff had followed in suing defendant. The parties were in disagreement on that issue, and the court invited them to brief the question. The parties subsequently filed a joint pretrial order stipulating that plaintiff filed her URESA action under the civil enforcement and not the registration sections of the uniform act. They also filed supplemental briefs on the summary judgment motion. After review of the relevant statutes, the case law and the parties' arguments, the Court grants judgment to plaintiff.

## I.

The Texas URESA statute provides "The purposes of this chapter are to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto," (§ 21.02).[3] The act was designed to supplement, not supplant, existing methods of enforcement since "[c]onventional judicial proceedings had proved unsatisfactory largely because the defaulting spouse-obligor was frequently outside the jurisdiction and the obligee could rarely afford to travel to distant states and litigate the question of support obligation." *O'Halloran v. O'Halloran*, 580 S.W.2d 870, 871 (Tex.Civ.App. 1979).[4] Thus, Section 21.04 states that, "[t]he remedies herein provided are in addition to and not in substitution for any other remedies even though prior orders of support exist in this state or any other jurisdiction." Among the provisions for civil enforcement (§§ 21.21–21.45), Section 21.43

2. Brian had married on June 16, 1974 and was therefore emancipated and no longer eligible for support.

3. URESA has been adopted by the fifty states, the District of Columbia and Puerto Rico. It provides three methods of enforcement: criminal enforcement, civil enforcement and registration of foreign support orders. Under the civil enforcement provisions, §§ 21.21–21.60, a Texas district court responds to a petition filed in another state and transmitted to Texas, petitioner is represented by the Texas district attorney, and the duty of support is relitigated.

Sections 21.61–21.66 provide for registration by an out of state obligee in a Texas court of a verified copy of the support order. Courts have held that the registered order may not be modified. *See, e.g., Littrell v. Littrell*, 601 S.W.2d 207 (Tex.Civ.App.1980); *O'Halloran v. O'Halloran*, 580 S.W.2d 870 (Tex.Civ.App. 1979).

4. *See* "Commissioners' Prefatory Note" to Uniform Reciprocal Enforcement of Support Act (1950 Act) in 9A Uniform Laws Annotated (1979), at 751.

addresses the relationship of a URESA order to other support orders, stating

> No order of support issued by a court of this state shall supersede any other order of support, but the amount for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both.[5]

Defendant in the instant case maintains that the Bexar County court properly exercised its authority to modify the New York decree in accordance with "a substantial and material change in circumstances" since the time the New York order was entered, and that the Bexar County court order superseded the New York order. Plaintiff originally argued that the Bexar County court had no authority to modify the support decree of the State of New York, and that the New York decree should be given full faith and credit under the United States Constitution, Article IV, Section 1 and 28 U.S.C. § 1783. Now, however, conceding that she filed a civil enforcement action, plaintiff seeks only that amount by which the unpaid child support due under the New York order exceeds child support paid pursuant to the Bexar County order. She accepts as credit against defendant's debt the amounts he paid in compliance with the Texas order and, does not challenge the validity of the modification of child support obligations by the Texas court. The question before this Court, therefore, is whether the Texas court's modification of the amount of child support is a bar to this court's enforcement of the valid New York judgment.

## II.

A preliminary consideration is whether the Court is bound by the arrearages ordered in the URESA action. Defendant argues, and the magistrate concluded, that this Court cannot order defendant to pay arrearages due under the New York order because the Bexar County court's reduction in child support arrearages due to the date of its order is *res judicata* in this Court.

Texas Family Code Annotated, Section 14.08(c)(2), added by the legislature in 1974, requires that in proceedings brought in Texas state courts, "an order providing for the support of a child may be modified only as to obligations accruing subsequent to the motion to modify." The case law makes clear that a Texas court in a local action lacks authority to modify the obligations for past due child support, or arrearages, or the date and manner of payment. *Richey v. Bolerjack*, 594 S.W.2d 795, 799 (Tex.Civ. App.1980). *Whitley v. Whitley*, 566 S.W.2d 660, 662-3 (Tex.Civ.App.1978) and *Houtchens v. Matthews*, 557 S.W.2d 581, 584 (Tex. Civ.App.1977) (writ dismissed). Therefore, if Texas law applied in the URESA action, the Bexar County court did not have the authority to modify the amount of arrearages due under the New York order.

The parties have provided, and the Court has found, no case law governing the modification of arrearages in a URESA civil enforcement action. However, in other actions to enforce a foreign judgment Texas courts have not allowed modification of arrearages. In *Hollis v. Hollis*, 508 S.W.2d 179 (Tex.Civ.App.1974), the court implied that where plaintiff seeks to enforce a foreign judgment on the basis of the full faith and credit clause of the United States Constitution, arrearages as opposed to future payments due under the foreign order are binding on a Texas court. It noted, in *dicta*,

> it is generally conceded that a foreign decree for future installments of child

---

**5.** The 1968 Uniform Enforcement of Support Act provides in § 31

> A support order made by a court of this State pursuant to this Act does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State.

support *not yet due* does not, as to such installments, bind the forum by the full faith and credit clause where such future installments are subject to change by the court rendering the decree.

*Id.* at 183, n. 8 (emphasis added).

In a URESA registration action, one Texas appeals court has applied the arrearage rules of the state which issued the original support order. *Parker v. Parker*, 593 S.W.2d 857, 859 (Tex.Civ.App.1980) affirmed a judgment for past due alimony and child support noting that although, pursuant to the Georgia statutes the parties' property settlement agreement permitted modification of child support based on a change in the financial status of the husband, the Georgia Supreme Court had held that past due child support is vested and cannot be modified, and that the Texas Supreme Court grants full faith and credit to foreign alimony decrees where arrearages are vested and absolute by the law of a sister state. In *Littrell v. Littrell*, 601 S.W.2d 207, 209 (Tex.Civ.App.1980) another court of appeals, reciting the purpose of URESA to provide "a procedure whereby foreign support orders could be enforced in the domicile of the obligor without involving the other issues in the parent-child relationship, including the modification of the terms of support orders," held that the inability of a Texas court in a URESA registration action to modify future support payments amounted to a lack of subject matter jurisdiction.

■ In the instant case the parties have not proved the law of New York with regard to the vesting or modification of arrearages. Where a foreign state's law is not proven, that law is assumed to be the same as the law of the forum.[6] Thus, applying Texas law, arrearages owed to plaintiff by defendant were vested in plaintiff, and could not have been reduced by the Bexar County court. If the Texas court's error was jurisdictional, its order could be collaterally attacked in this Court and would bind this Court only as to the four hundred dollars which accrued between October 10, 1974 and the filing of this suit, which were future payments at the time of the Bexar County court order but are now arrearages in federal court. If the error was one of law and plaintiff had appealed the order, it would, under this Court's reading of Texas law, have resulted in a reversal. Plaintiff's failure to appeal does not affect this Court's enforcement of the New York support decree however. As noted in part I, above, and as more fully discussed in parts III and IV below, URESA supplements but does not supplant other enforcement remedies and, therefore, the state court's URESA order is not *res judicata* when the obligee sues to enforce the original support order in federal court.

### III.

■ In diversity actions this Court sits in effect as a Texas court and is bound to apply the statutory and case law of the state of Texas. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *Maner v. Maner*, 401 F.2d 616 (5th Cir. 1968). Section 21.43 of the Texas URESA statute, cited above, provides that, "[n]o order of support issued by a court of this state shall supersede any other order of support, . . . ." Texas courts have not

6. *Brown v. Brown*, 555 S.W.2d 784 (Tex.Civ.App.1977), *Follak v. Brown*, 530 S.W.2d 882, 883–84 (Tex.Civ.App.1975), where plaintiff sought to enforce by habeas corpus petition the change in child custody ordered by a South Carolina court, held,

> Inasmuch as the South Carolina court exercised continuing jurisdiction over this matter, together with the accepted presumption that the law of another state is the same as that of Texas in the absence of pleading and proof of such law, we assume that the law of the state of South Carolina provides for continuing

jurisdiction as set forth in Section 11.05(a) . . . .

In *Hollis v. Hollis*, 508 S.W.2d 179, 182 (Civ.App.1974), the court held,

> [where] there was no proof of the law of Florida and there was no request that the trial court take judicial notice thereof as permitted by Rule 184 of the Texas Rules of Civil Procedure . . . the Florida law is presumed to be the same as that of Texas . . . which of course permits the change of child support orders . . . .

ruled on the question of their power to enforce a foreign original child support order under the full faith and credit clause of the United States Constitution, in the face of an intervening modification of that order by another Texas court responding to a URESA civil enforcement petition. The decisions indicate, however, that a Texas court would not be barred from enforcing the original New York support order by another Texas court's modification under URESA.

Texas statutory law, Tex.Fam.Code Ann. § 11.05(a), establishes a rule of continuing and exclusive jurisdiction. It provides with certain exceptions not relevant here,

> [W]hen a court acquires jurisdiction of a suit affecting the parent-child relationship, that court retains continuing jurisdiction of all matters provided for under this subtitle in connection with the child, and no other court has jurisdiction of a suit affecting the parent-child relationship with regard to that child . . . .

The rule of continuing jurisdiction has been given extraterritorial application on the presumption that the law of a foreign state is the same as Texas law. *Brown v. Brown*, 555 S.W.2d 784, 787 (Tex.Civ.App. 1977), *Follak v. Brown*, 530 S.W.2d, at 883 (Tex.Civ.App.1973) (writ ref'd n.r.e.). Thus, the New York court's jurisdiction over the child support in the present case can be presumed to be continuing.

The courts have not held a foreign court's jurisdiction exclusive so as to bar the jurisdiction of a Texas court. *Hollis v. Hollis*, 508 S.W.2d 179 (Tex.Civ.App.1974) held that the Texas rule of continuing and exclusive jurisdiction applies only to one Texas court vis-a-vis another Texas court. It rejected appellant's contention that because the Florida court which had divorced the parties had continuing and exclusive jurisdiction, a Texas court did not have jurisdiction under the full faith and credit clause of the United States Constitution to determine the child support issue. The court relied on Tex.Civ.Stat.Art. 4369a § 1, the precursor of Tex.Fam.Code Ann. § 11.05(a) and noted that the rule that the court granting the divorce has continuing and exclusive jurisdiction of the support issue

> derived from the statutory enactments making specific provisions for minor children affected by divorces granted by Texas Courts. Thus, the rule is directed to, and all the cases announcing the application of the rule speak of, the child support jurisdiction of the Texas court which granted the divorce as being exclusive only of all other Texas courts to make orders concerning child support.

*Id.*, at 182. By this reasoning the jurisdiction of a Texas court which did not divorce the parties but heard the case under URESA would not be exclusive of the jurisdiction of other state or federal courts.

*Hollis*, like the present case, was not a URESA action. Plaintiff's former husband sought enforcement of the Florida divorce decree and visitation privileges in a Texas court under the full faith and credit clause and the former wife cross-claimed for complete custody of the minor children and an increase in child support. The trial court recorded in its judgment that "the parties appeared in person and by counsel and announced ready, the court found it had venue and jurisdiction of the parties and the children and the subject matter of custody and visitation." *Id.* 508 S.W.2d at 181. In support of its finding that a foreign court does not have jurisdiction exclusive of Texas courts the court of appeals noted that exclusive jurisdiction in the interstate context, inconsistent with URESA because it would, in effect, force the former wife to go to the state of divorce or to file a URESA registration action in the current state of residence, and

> [e]ither course of action would naturally be, in the words of our Uniform Support Act "in addition to and not in substitution of any other remedies" available to appellee. We do not believe appellee's remedy is, or should be, restricted to either course where the forum's jurisdiction of both the subject matter and the parties is invoked by the pleadings and personal appearance of the parties for adjudication.

*Id.*, at 183. A federal court with subject matter and personal jurisdiction would also, under this rationale, not be restricted by the concurrent jurisdiction of a state court over a URESA remedy.

The only decision the Court finds in which a URESA decision was held to be *res judicata* in a subsequent action for child support was one in which the URESA court was also the court which issued the original divorce and child support order. In *Howard v. Brizendine*, 546 S.W.2d 136 (Tex.Civ. App.1977) the Walker County district court in Texas divorced the parties. Subsequently, that court received a URESA petition by the former wife who had moved to Washington state and, in the role of responding state court, denied the petitioner judgment for arrearages. Petitioner did not appeal that judgment. The former husband then filed a second URESA action in the same Texas district court to reduce child support and change visitation rights and his former wife cross claimed for the arrearages which the Walker County court had previously denied in the URESA action. The court of appeals affirmed the district court's conclusion that it's order on arrearages was *res judicata* because, under Tex.Fam.Code Ann. § 14.09,[7] the Walker County court, as a result of its divorce decree, had the power to enforce its orders by contempt or default judgment "[A]t the time the U.R.E.S.A. action was filed the trial court had statutory authority to consider and render a judgment on the issue of child support arrearage." Thus, the court's URESA ruling on arrearages was *res judicata* only because

the Walker County court had the power to enforce its original divorce and support order.

The continuing jurisdiction rule of § 11.-05 has been applied to a URESA action to hold that the Texas court in which a URESA action is filed has continuing jurisdiction to the exclusion of another Texas court in which a second URESA suit is filed. *In re Miller*, 583 S.W.2d 872 (Tex.Civ.App. 1979), the Texas Legislature, in the 1981 session, however, seeking to eliminate a procedural barrier to enforcement of child support and thereby to lessen the burden on the welfare rolls, amended the URESA statute, in particular §§ 21.24 and 21.32(a), to end the linkage between URESA and the continuing jurisdiction rule of § 11.05.[8] As a result URESA actions may now be heard by the court of the jurisdiction where the obligor lives regardless of whether that was the court which last had jurisdiction of the parent-child issue. The amendment strengthens the use of URESA as a supplemental remedy. In that the rule of continuing and exclusive jurisdiction is not applied to URESA actions, the URESA decision of a Texas court should not affect another Texas court's power to hear a second URESA or other action to enforce child support.

The authority of this Court to enforce the New York child support order is further supported by a 1974 Texas Civil Appeals Court decision. In *Strader v. Strader*, 517 S.W.2d 905 (Tex.Civ.App.1974) a former wife, filed a URESA civil enforcement action in New Mexico against her former

---

7. § 14.09 provides that

    (a) Any order of the court may be enforced by contempt.

    (b) A court may enforce an order for support as provided in R. 308A of the Texas Rules of Civil Procedure or any subsequent version of the rules promulgated by the Supreme Court.

    (c) On the motion of any party entitled to receive payments for the benefit of a child, the court may render judgment against a defaulting party for any amount unpaid and owing after 10 days' notice to the defaulting party of his failure or refusal to carry out the terms of the order. The judgment may be enforced by any means available for the enforcement of judgment for debts.

    (d) A parent may be compelled to testify in regard to his ability to support the child.

    *See also Freeland v. Freeland*, 313 S.W.2d 943 (Tex.Civ.App.1958) which held that where a Texas court entered the original divorce and support order, only that court could modify the order; a different Texas court acting as a responding court in URESA had no jurisdiction over support and the only remedy for plaintiff was a civil contempt proceeding in the original court.

8. *See* House Committee on Judiciary's "Bill Analysis" of H.B. 952.

husband in Texas. She claimed arrearages in child support ordered by the California court which divorced the parties and in a supplemental petition she pled a subsequent Nevada judgment for recovery of $11,605 in child support arrearages. The court of appeals upheld the Texas trial court decision which found a total arrearage of $26,000 and that the unpaid Nevada judgment between the parties was *res judicata* as to amounts due to the date of the order and quoted in full the trial court order's proviso, that its judgment in the language of Tex. Fam.Code Ann., § 21.43 (Vernon) "shall not supersede any other order of support, but amounts paid from this date forward, and paid pursuant to either order shall be credited against amounts accruing or accrued for the period under both orders." *Id.* at 907. In addition, the court rejected appellant's argument that the Texas court lacked jurisdiction because plaintiff had concurrently filed a suit in federal court in California seeking the child support awarded in the California divorce decree, stating "[T]he remedy sought by plaintiff, collection of child support under the Uniform Reciprocal Support Act and the Texas Family Code is 'in addition and not in substitution for any other remedies.' Sec. 21.04 Texas Family Code, V.T.C.A." *Id.*, at 908. Thus, in the instant case, the action of the responding Texas court under URESA does not affect the power of a federal court with subject matter and personal jurisdiction to enforce the original child support order.

## IV.

■ The power of a third court to enforce the original child support order appears, at first blush, to conflict with the power of a state court, responding to a URESA petition, to modify the original order. Because the Texas URESA statute, § 21.43, provides for crediting amounts paid under one order to amounts due under the other, the order providing the higher amounts of support payments will always take precedence, and therefore a URESA reduction of support will be rendered void by enforcement of the original order.

There is, as noted in *O'Halloran v. O'Halloran*, 580 S.W.2d at 872, a division of opinion on the question whether a responding state court which acts on the petition filed in the initiating state in civil enforcement actions may modify an existing support decree of another state. "The majority view is that modification, at least as to future obligations, is permitted if found by the responding state to be justified." But "[t]he question has not been definitely settled in Texas." *Id.*

Nevertheless, a review of various courts' consideration of the question of the power of a court to modify child support payments reveals concurrence among the jurisdictions as to the vitality of the original order of support. Thus, the South Dakota Supreme Court has held that because URESA restricts the court's jurisdiction over the out of state party in a civil enforcement action by the provision that "participation in any proceedings under this chapter shall not confer upon any court jurisdiction of any of the parties thereto in any other proceeding . . .,"[9] and URESA is only a supplemental method of enforcement, state courts must give full faith and credit to orders of other states, including the amount of support provided in the foreign decree. *Craft v. Hertz*, 182 N.W.2d 293 (N.D.1970). Similarly, a Kentucky court has construed the Kentucky and Florida statutory provisions that a URESA support order shall "not supersede any previous order" of support to forbid a responding state court from reducing the amount of support ordered by the court of a sister state. *Hamilton v. Hamilton*, 476 S.W.2d 197, 200 (Ky.1972). These jurisdictions bar modification by a responding state in order to protect the vitality of the original order.

The majority of jurisdictions, allow modification in a URESA civil enforcement action precisely because the URESA order of the responding state does not supersede or invalidate the prior orders. For example, *Despain v. Despain*, 78 Idaho 185, 300 P.2d

---

**9.** The analogous Texas statute is Tex.Fam.Code Ann. § 21.44 (Vernon).

500, 503 (1956), noting that URESA provides an auxiliary or supplemental remedy for enforcement of support orders, held that a court may modify support orders based on the ability at that time of the spouse to pay. It reasoned, from the Idaho statutes analogous to §§ 21.04 and 21.43 of the Texas URESA, that "The authority of the court originally ordering payment is not affected or is its order modified by an order of the court of the responding state fixing a different sum." [10]

Similarly *Ainbender v. Ainbender*, 344 A.2d 263, 265 (Del.1975) construed the Delaware statute providing "Any order of support issued by a court of this State when acting as a responding State shall not supersede any previous order of support issued" to mean that both the original and the modifying support orders are valid. The court held that the statute "is designed merely to prevent duplication of payments and in no way limits the ability of the court in the responding state to order support payments in an amount in excess of the original order," and relied on the statement in *Howard v. Howard*, 191 So.2d 528 (Miss. 1966), that "[t]he original order of support rendered in the court of the initiating state is unaffected by the orders subsequently

rendered in another state under the Uniform Act, except to the extent that payments . . . must be credited . . ."), see *Commonwealth ex rel. Byrne v. Byrne*, 212 Pa. Super. 566, 243 A.2d 196 (1968); *Davidson v. Davidson*, 66 Wash.2d 780, 405 P.2d 261 (1965), and *Moore v. Moore*, 252 Iowa 404, 107 N.W.2d 97 (1961).[11]

The Court concludes that the Bexar County URESA order could not supersede the original New York child support order. The Uniform Enforcement of Support Act was designed neither to achieve a more precise fit between support obligations and the current circumstances of the parties, nor to give the jurisdiction in which the obligor resides the final word on the issue of child support, but simply to strengthen and improve enforcement. The Court knows of no decision in Texas or any other jurisdiction which holds that one state's URESA order renders another state's original order of divorce and support void or prevents a federal court with jurisdiction over the parties from enforcing that original order. In this case, the plain language of the Texas statute and the purpose of the Uniform Act require enforcement of the New York order.[12] Judgment is, therefore, granted to plaintiff.

10. Certain states have adopted language in the URESA statute that provides that a responding state court's support order under URESA "does not modify" the support order made by a court of any other state "unless otherwise specifically provided by the court." The Montana Supreme Court has construed this language to mean that "URESA support orders that do not refer to prior support awards do not modify them." *Campbell v. Jenne*, 172 Mont. 219, 563 P.2d 574 (1977).

11. Federal courts have also taken this approach. In *Helgesson v. Helgesson*, 196 F.Supp. 42, 46 (D.Mass.1961), aff'd 295 F.2d 37 (1st Cir. 1961) the court held that the Massachusetts state court actions under URESA
and the orders made by the courts in those proceedings, together with acceptance by the plaintiff of payments made by the defendant for the support of the minor child in compliance with such orders do not affect the enforceability of alimony provisions of the California judgment. The remedies provided by that act are in addition to and not in substitution for any other remedy.

And the district court in *United States v. Stephens*, 472 F.Supp. 14, 16 (D.Tenn.1979), affirmed *U. S. v. Stephens*, 659 F.2d 1083 (6th Cir. 1981), in rejecting the argument that a Tennessee state court's URESA decision operated as a final adjudication of appellant's child support obligations, held that the state URESA statute, as construed by Tennessee courts,
simply does not empower a Tennessee court to render void the valid orders of a foreign jurisdiction . . . . [P]ursuant to the act, a Tennessee court may modify a foreign support judgment for the limited purpose of its own enforcement, . . . but such action by the court does not affect the underlying validity of the foreign decree.
(Citations omitted.)

12. Under the full faith and credit clause of the United States Constitution, Article IV, Section 1, this Court may modify future payments due under an original support order in light of the parties' current circumstances, to the extent that the court which issues the order may modify the payments *New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed.

Finally, the Court finds that plaintiff's attorney's fees were necessary to defendant's minor child and, like unpaid support payments, essential for the support of the child. It was defendant's failure to meet his support obligations which required plaintiff, who had the duty to provide for and protect the child, to bring this action. *Uhl v. Uhl*, 524 S.W.2d 534, 538 (Tex.Civ. App.1975), Tex.Rev.Civ.Ann., art. 2226 (Vernon). The parties are directed to meet and confer within fifteen days of entry of this Order for the purpose of attempting to reach agreement on the amount of the attorney's fee and the form of the final judgment. If agreement cannot be reached plaintiff is directed to submit evidence in support of the fee, detailing services performed and the basis of compensation requested and a proposed judgment within thirty days of entry of this Order.

The Clerk shall file this Memorandum Opinion and Order and provide a true copy to counsel for all parties.

1133 (1947). In the present case, however, the future payments, are at issue. By the time plaintiff came to federal court, all payments—the $1,040 due between filing of the URESA action and Peter's emancipation as well as the accrued amounts under the Bexar court order—were arrearages.