**BOBBS, Appellant,**

v.

**CLINE, f.k.a. Bobbs, Appellee.**

[Cite as *Bobbs v. Cline* (1997), 116 Ohio App.3d 46.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 96–JE–4.

Decided Jan. 6, 1997.

*Charles E. Bobbs, pro se.*

*M. Catherine Savage,* for appellee.

Cox, Judge.

This matter presents a timely appeal from a judgment rendered by the Jefferson County Common Pleas Court, Domestic Relations Division, finding that appellant, Charles E. Bobbs, owed the sum of $18,782.45 in total child support arrearages through December 31, 1995 and ordering him to continue to pay the sum of $250 per month towards those arrearages.

The marriage of the parties was dissolved by decree of dissolution of marriage filed by the trial court on March 23, 1981. Incorporated into the decree was a separation agreement that was executed by both parties and that provided that appellant pay appellee, Candy J. Bobbs Cline, the sum of $250 per month as and for child support.

Subsequent to the dissolution of the parties' marriage, appellant relocated to the state of Florida, while appellee remained with the minor children in the state of Ohio. An action under the Uniform Reciprocal Enforcement of Support Act ("URESA") was thereafter commenced by appellee to enforce the Ohio child support order against appellant in Florida. The child support order was ultimately referred to Florida.

On July 18, 1990, the Florida court issued an order adjudicating appellant in contempt for failing to pay child support and found that he was in arrears in the amount of $8,663 through May 10, 1990. Appellant was ordered to pay $200 per month in current child support and $40 per month to satisfy the arrearages.

On September 28, 1990 and September 30, 1991, the Jefferson County Child Support Enforcement Agency in Ohio ("JCCSEA") issued notices to appellant that advised him that he was in arrears on his child support obligation by at least $7,781 and $9,610, respectively, and that such amounts would be referred to the Internal Revenue Service for collection. The record reveals that no objections were made by appellant to those determinations in arrearages.

Appellant subsequently failed to pay child support and, on June 15, 1992, an additional order adjudicating appellant in contempt was filed by the Florida court. At this time, appellant was found to be in arrears on his child support payments in the amount of $10,917.96 through May 10, 1992 and was ordered to

pay $200 per month in current child support and $25 per month to satisfy the arrearages.

On September 27, 1992, October 7, 1993 and September 30, 1994, additional notices from the JCCSEA were sent to appellant advising him of arrearages on his child support obligation and indicating that such amounts would be referred to the Internal Revenue Service for collection. The notice dated September 30, 1994 stated that appellant owed at least $19,302 in child support arrearages and, again, the record reveals that no objections were made by appellant to such determinations.

On October 5, 1995, the JCCSEA filed a report with the trial court stating that the parties' last minor child had reached eighteen years of age, had graduated from high school, and should therefore be emancipated. The report also indicated that appellant owed the sum of $19,590.11 in arrearages through August 31, 1995. Based upon that report and the fact that neither party requested a hearing, the trial court filed its journal entry on October 18, 1995, terminating appellant's child support obligation, but ordering that he continue to pay the sum of $250 per month towards his arrearages.

On November 8, 1995, appellant filed objections to the trial court's journal entry and order, complaining that the arrearages as calculated by the JCCSEA were in error. On November 15, 1995, the trial court filed its journal entry with regard to appellant's objections, finding that although appellant had requested an administrative mistake-of-fact hearing, there was nothing in the record to indicate that an actual hearing had been held by the JCCSEA. Therefore, the trial court ordered that the hearing be immediately scheduled.

In a report filed by the JCCSEA on December 12, 1995, the trial court was notified that an administrative mistake-of-fact hearing was held via telephone and that appellant had requested a recalculation of his arrearages based upon the child support obligation of $200 per month as issued by the Florida court. A recalculation was completed and it was determined that appellant owed the sum of $9,131.57 in arrearages through August 1995. The JCCSEA further requested that the trial court allow the recalculation.

On December 29, 1995, the trial court filed a journal entry stating that the Florida court, as the responding court, had jurisdiction only to enforce the Ohio court's child support order and had no authority to modify the amount of child support which was previously ordered by the Ohio court. The trial court further directed that the JCCSEA give appellant credit for all amounts of child support paid by order of the Florida court and recalculate the arrearages owed herein using the support amount of $250 per month. Appellant was thereby ordered to continue paying the sum of $250 per month until the arrearages were satisfied.

On January 5, 1996, the JCCSEA filed a report indicating that pursuant to the trial court's order, the arrearages owed by appellant were recalculated and it was determined that he owed the sum of $18,782.45 through December 31, 1995. The trial court filed an additional journal entry on January 12, 1996 finding that the arrearages owed by appellant were $18,782.45. It is from this decision that the within appeal emanates.

Appellant's sole assignment of error on appeal alleges:

"The judge made an error when he determined that the arrearages owed by Appellant are more than the arrearages determined to be due by the Jefferson County Child Support Enforcement Agency in December, 1995, and ordered by the Fifteenth Judicial Circuit, Palm Beach County, Florida in 1990 and 1992."

Appellant maintains that in requiring him to pay approximately $10,000 more in child support arrearages than was determined to be due and owing by the Florida court, the trial court acted in an unfair, unjust, and impermissible manner that was contrary to Ohio law. Appellant contends that pursuant to *Wyatt v. Wyatt* (1992), 65 Ohio St.3d 268, 602 N.E.2d 1166, appellee is barred by the doctrine of *res judicata* and the Full Faith and Credit Clause from attempting to object to the settlement of her arrearage claim by the Florida court.

Appellant argues that the state of Ohio was represented by an attorney in the Florida court and agreed, on behalf of Ohio, to the amounts ordered by the Florida court with regard to child support and arrearages. Therefore, appellant concludes that there was no justification for the trial court herein to reject the recalculation of arrearages and order him to pay the sum of $18,782.45.

The purpose of an URESA action is to facilitate the payment of pre-existing child support obligations. *Jacobs v. Jacobs* (1988), 62 Ohio App.3d 271, 575 N.E.2d 480. In accordance with R.C. Chapter 3115, it is clear that upon receipt of an URESA petition from an initiating state, the responding state must conform its support order to the initiating state's order. Specifically, R.C. 3115.27 provides:

"A responding court shall not stay the proceeding or refuse a hearing under sections 3115.01 to 3115.34, inclusive, of the Revised Code because of any pending or prior action or proceeding for divorce, separation, annulment, dissolution, habeas corpus, adoption or custody in this or any other state. * * * If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the complaint being heard, the court must conform its support order to the amount allowed in the other action or proceeding."

R.C. 3115.28 further provides:

"Any support order issued by a court of this state pursuant to sections 3115.01 to 3115.34, inclusive, of the Revised Code * * * is not nullified by a support order

made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court."

In *San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 12 O.O.3d 88, 388 N.E.2d 1229, the Ohio Supreme Court stated that an initial URESA order is modified only if the original court which granted the parties' divorce specifically orders the modification. In *Paton v. Brill* (1995), 104 Ohio App.3d 826, 663 N.E.2d 421, the court followed the Ohio Supreme Court's interpretation and further held that that interpretation was fully supported by the Full Faith and Credit for Child Support Orders Act of 1994. The purpose of that Act was to prevent parents from avoiding their financial responsibilities to their children by moving to another jurisdiction and availing themselves of pre-existing legal loopholes caused by disparate state laws, in essence, to prevent parents from forum shopping for more favorable child support laws. *Paton, supra.*

In the case at bar, the Florida court had no authority to change the amount of the child support order as issued by the Ohio trial court. Upon receipt of the Ohio order, the Florida court should have conformed its order to that which was initially issued by Ohio. Jurisdiction over the children remained in Ohio and there was no evidence in the record to indicate that the trial court ordered a modification or provided otherwise for modification of its order, or that the parties hereto agreed in writing that the Florida court, as responding court, could modify the Ohio order.

Appellant's reliance upon *Wyatt, supra,* is misplaced, as *Wyatt* differs factually from the case at bar. In *Wyatt,* the obligee to the child support obligation at issue gave actual authority to the child support enforcement division in the responding state to settle the child support obligation. That is not the situation here. Furthermore, the doctrine of *res judicata* does not bar the trial court from making a determination of child support arrearages based upon the original Ohio court order of support, as that issue was not previously litigated. By issuing an order of support in an amount different from that ordered by the Ohio court, the Florida court merely established another support obligation for appellant. However, at no time was appellant absolved of his support obligation as originally set forth by the trial court.

Appellant's sole assignment of error on appeal is found to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. O'NEILL, P.J., and GENE DONOFRIO, J., concur.