OPINION.
Plaintiff-appellant, Christo Lassiter, appeals from a divorce decree that ended his marriage to defendant-appellee, Sharlene Lassiter, divided the parties' property, and ordered Christo to pay child support. This court has not seen many domestic relations cases more contentious and acrimonious or more consumption of judicial time and resources than this case. The parties, who are both law professors and who ought to know better, engaged in thoroughly inappropriate behavior that was detrimental to the resolution of their case and to the welfare of their children, for which both claimed to be primarily concerned. Their actions caused this case to drag on for five years. This court takes a dim view of such tactics. After reviewing the voluminous record, we conclude that the trial court's decision was thoughtful and thorough, despite the parties' numerous motions and general lack of civility. Our review of the record shows no abuse of discretion by the trial court.
Christo presents eight assignments of error for review. In his first assignment of error, he contends that the trial court erred in calculating child support. Relying on this court's decision in Weinbergerv. Weinberger (May 15, 1998), 1st Dist. No. C-970552, he contends that this case involves de facto shared parenting and that he is entitled to an offset in child support for the time that the children spend with him. We disagree.
Weinberger involved an actual shared-parenting decree in which each parent was designated the residential parent. In this case, there is no shared-parenting decree. The trial court specifically designated Sharlene as the children's residential parent and legal custodian and Christo as the nonresidential parent. Consequently, Weinberger is not dispositive, and we decline to extend it to the facts of this case, as Christo requests.
Simply put, there is no such thing as de facto shared parenting. Either a shared-parenting decree exists or it does not. The provisions of former R.C. 3113.215 and the child-support calculations it contained were mandatory, and courts were required to follow them literally and technically in all respects. Marker v. Grimm (1992), 65 Ohio St.3d 139,601 N.E.2d 496, paragraph two of the syllabus. Former R.C. 3113.215(C) set forth presumptions that the residential parent's child-support obligation is spent on that child and does not become part of a child-support order, and that the nonresidential parent's child support does become part of the order. These presumptions apply in this case. SeePauly v. Pauly, 80 Ohio St.3d 386, 387, 1997-Ohio-105, 686 N.E.2d 1108. Christo is not entitled to a credit in his child-support payments for the time the children spend with him.
The trial court properly calculated child support in accordance with the sample worksheet set forth in former R.C. 3113.215(E). See Rock v.Cabral (1993), 67 Ohio St.3d 108, 110, 616 N.E.2d 218; Miller v. Miller
(Sept. 17, 1999), 1st Dist. No. C-980892. The trial court appropriately considered the issue of extended visitation time relating to a deviation from the amount calculated in the worksheet. See Marker, supra, at 142,601 N.E.2d 496; Fernback v. Fernback, 7th Dist. No. 00-C.A.-276, 2001-Ohio-3482. Under the circumstances, we cannot hold that the trial court's decision on child support was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion, and we overrule Christo's first assignment of error. See Pauly, supra, at 390,686 N.E.2d 1108; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218,450 N.E.2d 1140.
In his second assignment of error, Christo takes issue with the amount of the downward deviation from the calculated amount of child support. Essentially, he contends that, based on the evidence of his actual out-of-pocket expenditures, he was entitled to a larger deviation. Our review of the record shows that the trial court concluded that a deviation from the amount of child support shown in the worksheet was appropriate and in the children's best interest. It properly considered former R.C. 3113.215(B)(2)(b) because the parties' combined gross income exceeded $150,000. See Frazier v. Daniels (1997), 118 Ohio App.3d 425,428-429, 693 N.E.2d 289; Miller, supra. It also considered the appropriate statutory factors justifying the amount of the deviation and made findings of fact supporting that deviation. See Marker, supra, at 142, 601 N.E.2d 496; Fernback, supra; Miller, supra. The record does not show that the amount of the deviation was so unreasonable, arbitrary or unconscionable as to connote an abuse of discretion. See Pauly, supra, at 390, 686 N.E.2d 1108; Blakemore, supra, at 218, 450 N.E.2d 1140. Accordingly, we overrule Christo's second assignment of error.
In his third assignment of error, Christo contends that the trial court erred by making the child-support order that included the deviation retroactive to May 9, 1999, the date Christo filed his motion for modification of child support, instead of to November 12, 1996, the date the initial order setting temporary child support was issued. While the law generally provides that the trial court may make modifications of non-delinquent child-support obligations retroactive to the date of the filing of the motion for modification, the court has broad discretion in determining whether and to what date to make a support order retroactive. Pacurar v. Pacurar (1999), 132 Ohio App.3d 787, 789-790,726 N.E.2d 552; Hamilton v. Hamilton (1995), 107 Ohio App.3d 132,139-140, 667 N.E.2d 1256; Torbeck v. Torbeck (Sept. 28, 2001), 1st Dist. No. C-010022. Christo has not demonstrated that making the support order retroactive to 1996 was in the children's best interest or that the trial court's decision was so unreasonable, arbitrary or unconscionable as to connote an abuse of discretion. See Blakemore, supra, at 218,450 N.E.2d 1140; Hamilton, supra, at 139, 667 N.E.2d 1256; Torbeck,
supra. Accordingly, we overrule his third assignment of error.
In his fourth assignment of error, Christo contends that the trial court's finding of sanctionable misconduct related to the sale of the marital residence was against the manifest weight of the evidence. To the contrary, the record contains substantial evidence that Christo deliberately delayed the sale of the property for his own purposes and caused additional expenses and costs to accrue. Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Middendorf v. Middendorf,82 Ohio St.3d 397, 401, 1998-Ohio-403, 696 N.E.2d 575; Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
The trial court has broad discretion in fashioning an equitable property division. Berish v. Berish (1982) 69 Ohio St.2d 318, 319,432 N.E.2d 183; Cherry v. Cherry (1981), 66 Ohio St.2d 348,421 N.E.2d 1293, paragraph two of the syllabus; Terry v. Terry (1994),99 Ohio App.3d 228, 232, 650 N.E.2d 184. Particularly, the trial court has discretion pursuant to R.C. 3104.171(D)(3) as to whether to compensate one spouse for the financial misconduct of the other. Seybertv. Seybert, 11th Dist. No. 99-T-0119, 2001-Ohio-8739. In this case, we cannot hold that the trial court's decision to compensate Sharlene for Christo's financial misconduct was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Middendorf,
supra, at 401, 696 N.E.2d 575; Blakemore, supra, at 218, 450 N.E.2d 1140.
Christo further argues that Sharlene's execution of a release in relation to a failed sale of the property, which stated that all parties were released "from any obligation or liability thereunder," barred her claim of economic misconduct related to the sale. We disagree.
A release of a cause of action for damages is an absolute bar to any claim encompassed within the release. Haller v. Borror Corp. (1990),50 Ohio St.3d 10, 13, 552 N.E.2d 207; Okocha v. Fehrenbacher (1995),101 Ohio App.3d 309, 318, 655 N.E.2d 744. A release is a contract, subject to all requirements for a valid contract. Noroski v. Fallet
(1982), 2 Ohio St.3d 77, 79, 442 N.E.2d 1302; Okocha, supra, at 318,655 N.E.2d 744.
The interpretation of a written agreement is, in the first instance, a matter of law for the court. If it is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. Aultman Hosp. Assn. v. CommunityMut. Ins. Co. (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920;Crowninshield/Old Town Comm. Urban Redevelopment Corp. v. Campeon Roofing Waterproofing, Inc. (1998), 129 Ohio App.3d 819, 823, 719 N.E.2d 89. The release in question was signed by the Lassiters, as the sellers of the marital residence, and the prospective buyers. It stated that the contract of sale between the Lassiters and the buyers was void. The plain and unambiguous language of the release indicated that the parties intended to release the buyers and the sellers from all obligations related to that contract of sale. It did not indicate an intent to release any claims related to the property division between the Lassiters.
We agree with the trial court when it stated,
 [L]anguage purporting to define and/or abolish marital rights as between the parties themselves, as part of a release involving third parties vis a vis a specific real estate transaction, or purporting to extinguish the equitable powers of this court to address issues as between them, would be against public policy and unenforceable.
 The subject matter jurisdiction of this court to address property division, or related issues of marital misconduct, and attorney fee award requests generally cannot be abrogated by contractual arrangements, including releases, between the parties purporting to redefine or otherwise modify the rights conferred upon them by statute by virtue of their marital status, this per R.C. 3106.06.
 Consequently, the release did not bar the trial court's findings related to the marital misconduct. Accordingly, we overrule Christo's fourth assignment of error.
In his fifth assignment of error, Christo contends that the trial court erred in "violating the doctrines of full faith and credit, res judicata, and comity in disregarding prior judicial rulings concerning" the marital residence. Specifically, he refers to a New Mexico court's ruling, in a suit filed by Christo's parents against him and Sharlene, that both he and Sharlene were jointly and severally liable to repay monies loaned by Christo's parents for the purchase of the residence. He also refers to a Washington, D.C., court's ruling regarding the distribution of the proceeds of the sale of the house.
We note that the trial court ruled that the records of the proceedings before the other courts were not properly before it because Christo had attached them to his brief instead of properly introducing them as exhibits in the hearings on property division. We need not reach the propriety of that decision because Christo's arguments fail on the merits.
Neither the New Mexico nor the Washington, D.C., judgment involved the same issues presented to the domestic relations court in this case. Whether the debt to Christo's parents was a valid debt or how the proceeds of the sale should have been actually distributed were separate issues from how the parties should have been credited with the assets and liabilities associated with that property as part of the property division. The domestic relations court had exclusive jurisdiction to divide the parties' property and debts. R.C. 3105.171(B); Suveges v.James (Oct. 19, 1995), 8th Dist. No. 68533.
Because there was no identity of issues between the parties' divorce case and the cases decided by the other courts, the trial court did not fail to give full faith and credit to the judgments of the other courts. Further, the doctrines of res judicata and collateral estoppel did not apply. See Wyatt v. Wyatt (1992), 65 Ohio St.3d 268, 269-270,602 N.E.2d 1166; Trautwein v. Sorgenfrei (1979), 58 Ohio St.2d 493, 495,391 N.E.2d 326; Cox v. Cox (1998), 130 Ohio App.3d 609, 615,720 N.E.2d 946; Bobbs v. Cline (1997), 116 Ohio App.3d 46, 50,686 N.E.2d 556.
Christo further argues that the court's reasoning on marital debt and separate debt was internally inconsistent. He argues that, based on the court's reasoning related to other debts, the court, to be consistent, should have accepted the loan from his parents as a marital debt. However, the record does not show that the court declared the debt to be separate, but instead credited it to Christo based upon his misconduct relating to the sale of the residence. The lien on the property from the New Mexico judgment obtained by Christo's parents was inextricably tied to his misconduct in delaying the sale of the residence. As the court stated, "Husband has rendered to himself, through his close family surrogates, what would not have been otherwise rendered to him in the contest of this proceeding, i.e., the full $153,993 marital value of the Washington, D.C. real estate" Consequently, the court was justified in crediting Christo with that amount, and, as we have already held, its decision on that issue was not an abuse of discretion. We overrule Christo's fifth assignment of error.
In his sixth assignment of error, Christo states that the trial court erred in treatment of Sharlene's student loans, incurred prior to the marriage, as marital debt. In the trial court, Christo sought reimbursement of approximately $50,000 of marital funds used to discharge Sharlene's student loans. The trial court rejected that claim, holding that Sharlene's student loans, which were repaid as the result of joint and voluntary acts of the parties during the marriage, financed her education and allowed her to increase her earning capacity and to make significant financial contributions to the marriage. Because they benefited the marriage, they were a martial debt.
The trial court's characterization of property as separate or marital is a mixed question of law and fact, which must be supported by sufficient credible evidence. Kelly v. Kelly (1996), 111 Ohio App.3d 641,642, 676 N.E.2d 1210; Dooley v. Dooley (Aug. 7, 1998), 1st Dist. No. C-970616. The cases relating to student loans generally discuss whether education obtained because of the loans was beneficial to the marriage. See Thill v. Thill, 2nd Dist. No. 2001-CA-23, 2001-Ohio-1490; Kerbysonv. Kerbyson (Jan. 28, 1999), 4th Dist. No. 98CA23; Webb v. Webb (Nov. 30, 1998), 12th Dist. No. CA97-09-167; Dobran v. Dobran (May 2, 1996), 7th Dist. No. 93 C.A. 253.
The record contains substantial evidence of Sharlene's financial contribution to the marriage, which were directly attributable to her advanced degree. This is not a situation where the loans were incurred and the degree was obtained toward the end of the marriage. See Thill,
supra; Webb, supra. Because the evidence supported the trial court's finding that the loans were beneficial to the marriage, the trial court did not abuse its discretion in classifying them as marital debt. SeeMiddendorf, supra, at 401, 696 N.E.2d 575; Kelly, supra, at 642,676 N.E.2d 1210; Young, supra.
Christo further argues that if Sharlene's student loans constituted marital debt, then the future value of her degree should have necessarily resulted in an award of spousal support to him. See Stevens v. Stevens
(1986), 23 Ohio St.3d 115, 492 N.E.2d 131 syllabus. This argument is disingenuous given that Christo also has a professional degree and earns a higher salary then Sharlene. Further, he waived any claim for spousal support and may not now raise the issue on appeal. See Stores Realty Co.v. Cleveland (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629.
Christo also contends that his student loans should also have been treated as marital debt. However, he did not raise that issue below or present evidence as to his student loan debt, and he, therefore, waived that issue as well. See Stores Realty Co., supra, at 43, 322 N.E.2d 629. Accordingly, we overrule Christo's sixth assignment of error.
In his seventh assignment of error, Christo states that the trial court erred in failing to award him interest on marital debt he paid off after the parties' separation and prior to the entry of the divorce decree. The record shows that Christo borrowed funds from his credit union at fourteen percent interest to pay off some of the marital debt after the de facto termination of the marriage. He claims that he should have been reimbursed for interest at that rate.
The trial court rejected that argument for two reasons. It stated, "First, if husband chose unilaterally to borrow funds at 14%, wife, by his account, is automatically locked into reimbursing him at that rate, having the effect of dragging wife into what might arguably be a bad bargain, in essence, by default." Second, "it is not clear from the record if husband realized any diminution in his personal income tax by virtue of his ability to write-off the interest thus paid toward a residential mortgage, while seeking to charge wife for half the gross amount of the interest add-on without sharing the resultant tax diminution."
The trial court is in the best position to assess the financial positions of the parties. Greiner v. Greiner (Dec. 7, 2000), 8th Dist. No. 77181. The trial court's reasoning was sound, and it was supported by the evidence. The overall property division was equitable, and, under the circumstances, we cannot say that its decision to deny Christo's claim for interest was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See Berish, supra, at 319, 432 N.E.2d 183;Cherry, supra, at 355-356, 421 N.E.2d 1293. Accordingly, we overrule Christo's seventh assignment of error.
In his eighth assignment of error, Christo argues that the trial court abused its discretion in denying him the opportunity to amend his complaint. After five years of infighting and pettiness, the trial court was poised to enter the final decree and to grant the parties a divorce on the grounds of the incompatibility alleged in Christo's original complaint. At the final merit hearing, Christo sought to amend his complaint so that the sole ground alleged for the divorce would have been Sharlene's extreme cruelty.
Christo's motion to amend his complaint was not timely filed. Consequently, he was required to obtain leave of court to amend his complaint. Civ.R. 15(A); Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 4,465 N.E.2d 377, modified on other grounds by Jim's Steakhouse, Inc. v.Cleveland (1998), 81 Ohio St.3d 18, 688 N.E.2d 506. While the rules provide that courts should freely give leave to amend when justice so requires, the ultimate decision whether to grant leave lies within the trial court's discretion. Hoover, supra, at 5, 465 N.E.2d 377; Wells v.Bowie (1993), 87 Ohio App.3d 730, 735, 622 N.E.2d 1170; Easterling v.American Olean Tile Co., Inc. (1991), 75 Ohio App.3d 846, 850,600 N.E.2d 1088.
In this case, justice certainly did not require the trial court to give Christo leave to amend his complaint five years after its original filing simply so he could obtain his pound of flesh and win another meaningless battle in the ongoing war between the parties. The trial court wisely chose to put an end to that phase of the proceedings, granted the parties a divorce on the ground originally pleaded, and entered the final divorce decree. Justice and sanity required at that point that the parties' marriage be formally ended so that they could move on with their lives, at least if they so chose.
The trial court has broad discretion to determine the proper grounds for divorce. Buckles v. Buckles (1988), 46 Ohio App.3d 102, 116,546 N.E.2d 950. The trial court's decision to grant the parties a divorce on the grounds of incompatibility was not an abuse of discretion. Even if the court had committed some error, under the circumstances of this case, that error would most certainly have been harmless. See Sweet v.Sweet (Mar. 24, 2001), 5th Dist. No. 00-CA-99. Accordingly, we overrule Christo's eighth assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt and Winkler, JJ., concur.