**In re William M. "Mike" GARRETT, Debtor.**

**No. 03–60327.**

United States Bankruptcy Court, E.D. Texas, Tyler Division.

Sept. 30, 2004.

---

8. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

Jim Echols, Saunders, Schmidt, Echols, Ring & Heck, P.C., Tyler, TX, for Debtor, William M. "Mike" Garrett.

Dee Dinnie, Deputy Department Counsel, Santa Ana, California, for Claimant, Orange County Dept. of Child Support Services.

### MEMORANDUM OF DECISION

BILL G. PARKER, Chief Judge.

This matter is before the Court upon hearing of the objection filed by the Debtor, William Michael (Mike) Garrett (the "Debtor") to the proof of claim filed by the Department of Child Support Services, County of Orange, California (the "Claimant") in the above-referenced case and the hearing to consider confirmation of the Debtor's proposed Chapter 13 plan. The referenced priority claim is for an allegedly unpaid child support arrearage arising from the Debtor's divorce in California in 1981. The Debtor asserts that such child support obligation has been paid in full and his proposed Chapter 13 plan fails to provide for such a priority claim.[1] At the conclusion of the hearing, the Court took both matters under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

---

**1.** Subject to the result of the adjudication of the child support claim, the Chapter 13 Trustee objected to the confirmation of the Debtor's proposed Chapter 13 plan since it fails to provide for the Claimant's priority claim as required by 11 U.S.C. § 1322(a)(2).

**2.** This Court has jurisdiction to consider the confirmation of the Debtor's proposed plan

*Factual and Procedural Background*

In 1981, the Debtor was divorced from Linda Lee Garrett in Los Angeles County, California. A portion of the divorce decree imposed a child support obligation upon the Debtor in favor of his two minor children in the amount of $400.00 per month, commencing on October 16, 1981 and "continuing until said children reach the age of majority, die, marry, become emancipated or [upon the] further order of the court."[3] After the divorce was finalized, the Debtor moved to Smith County, Texas.

In 1996, the Office of the Texas Attorney General was procured by the State of California to initiate a child support enforcement action against the Debtor on behalf of Linda Lee Garrett in the 321st Judicial District Court of Smith County, Texas. On August 28, 1996, the Texas state court entered an "Order Enforcing Child Support Obligation (UIFSA)" which contained the following provision:

> The Court FINDS and confirms that WILLIAM MICHAEL GARRETT is in arrears in the amount of $15,530.00 as of August 16, 1996. This includes all unpaid child support and any balance owed on previously confirmed arrearages or retroactive support judgments as of the specified date, but does not include any application of any child support paid on that date. The judgment for this amount is a cumulative judgment.

> The Court GRANTS JUDGMENT against WILLIAM MICHAEL GARRETT and in favor of the Attorney General in the amount of $15,530.00, with interest at the rate of 12% per annum, for collection and distribution according to law.[4]

The judgment further provided that the Debtor would address that arrearage by paying $100.00 per month until the arrearage was paid or his child support obligation ended and, if the judgment had not been paid in full by the date that his regular child support obligation ceased, he would pay $300.00 per month from the termination date until the judgment was paid in full. A wage garnishment order was also implemented to fulfill the obligations imposed upon the Debtor by the judgment.[5]

Yet the August 1996 judgment rendered in Texas was erroneous because it failed to recognize and incorporate the interest which had accrued on the California judgment to that date under California law.[6] While the Texas judgment found arrearages totaling $15,530.00, the actual sum, including accrued interest, was $30,318.40. No appeal was taken by any party from the Texas judgment.

On February 27, 2002, the Debtor completed payment of all sums through the Office of the Texas Attorney General which were due under the August 1996

---

and his claim objection pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a). The Court has the authority to enter a final order in these contested matters since they each constitute a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(B), and (b)(2)(L), respectively.

3. See attachment to Claimant's proof of claim # 5.

4. Debtor's Exhibit A.

5. *Id.*

6. Under California law, "[a]defaulting parent is required to pay interest on support arrearages as a matter of law.... The lawful interest rate ... is specified by statute and accrues to each installment when each installment becomes due." *In re Marriage of Thompson,* 41 Cal.App.4th 1049, 48 Cal.Rptr.2d 882, 885–86 (1996)(*citing County of Los Angeles v. Salas,* 38 Cal.App.4th 510, 45 Cal.Rptr.2d 61, 62 (1995)).

judgment. This fact has been verified by statement and by ledger.[7] The completion of payments through the Attorney General's office is the basis of the Debtor's objection to the claim currently before the Court. He asserts that there is no remaining child support indebtedness which must be addressed in this Chapter 13 case. Notwithstanding the verification of receipt of all payments under the Texas judgment, the Claimant asserts that the amounts remaining unpaid under the original California decree remain enforceable against the Debtor and that, therefore, the claim must be recognized in this proceeding.

## Discussion

It is likely that no legal topic has generated more interstate cooperation and coordination than the collection of delinquent child support. The heightened priority given this issue has resulted in a series of uniform laws which have been adopted to varying degrees in virtually every American state during the past three decades and are identified by statutory acronyms which would make any federal regulator envious. The Uniform Reciprocal Enforcement of Support Act ("URESA") has yielded to the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA"), which has now been supplanted in every state by the Uniform Interstate Family Support Act ("UIFSA").[8] In addition, Congress enacted the Full Faith and Credit for Child Support Orders Act (the "FFCCSOA")[9] in 1994 to eliminate any further jurisdictional skirmishes between states which had previously impeded the prompt enforcement of child support orders.

The evolution of these statutes reflects the growing mobility of the American population and a concerted, gradual effort by the Congress and state legislatures to thwart the ability of a party responsible for family support to evade the effectiveness of a support order by simply moving to a state other than that which issued the support decree. This effort began with the adoption of URESA which, for the first time, provided a mechanism through which the interstate enforcement of a support decree could be easily accomplished. It created the concept of the "initiating state" certifying the existence of a support decree to the "responding state" which currently has jurisdiction over the support obligor and his property. From the outset, URESA, and its eventual replacement, RURESA, contained an anti-supersession provision that appeared to protect the viability of the original support decree.[10]

---

7.  See Debtor's Exhibit B and C.

8.  The adoption of this statutory scheme was mandated by the Congress of the United States in its adoption of the Personal Responsibility and Work Opportunity Act of 1996 (42 U.S.C. § 466) which required states to adopt the UIFSA by January 1, 1998, in order to remain eligible for the federal funding of child support enforcement activities. Certain states did so without repealing the versions of URESA or RURESA which the UIFSA was designed to replace.

9.  The FFCCSOA is codified at 28 U.S.C.A. § 1738B (West 1994 and West Supp.2004).

10.  Section 30 of the 1950 version of URESA provided that

> no order of support issued by a court of this state when acting as a responding state shall supersede any other order of support but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both.

That section was subsequently amended in 1968 and transposed into section 31 of RURESA which declared that

> a support order made by a court of this state pursuant to this Act does not nullify and is not nullified by ... a support order made by a court of any other state pursuant to a substantially similar Act or any other law, regardless of priority of issuance, unless otherwise specified by the court. Amounts paid for a particular period pursu-

However, conflicting decisions began to appear as to the application and impact of those provisions upon the power and ability of the "responding court" to modify the existing support obligation as a component of its enforcement effort. Most courts concluded that the responding court was entitled to enter a support order for an amount different from that in any previous order.[11] This anomaly resulted in a widespread recognition that, since URESA and RURESA were each designed solely as a supplemental means to enforce support orders and contained the anti-supersession clause, multiple orders of support with different obligation calculations might be outstanding *and enforceable* against an obligor, depending upon the jurisdiction which could be invoked against that obligor at any particular time. *See, e.g., Sheres v. Engelman*, 534 F.Supp. 286 (S.D.Tex.1982) [recognizing the URESA jurisprudence that "both the original and modifying support orders are valid" and holding that, since a Bexar County, Texas court acting under URESA did not possess the power to modify the original child support decree from New York, that original New York decree could be enforced in federal court]; *State v. Whitehead*, 735 S.W.2d 534, 536 (Tex.App.—Tyler 1987, no writ) [finding that the trial court erred in determining that it had no jurisdiction to modify an Ohio support decree but recognizing that any modification order could not affect the validity of the original decree and that URESA "assumes that separate and inde-

pendently valid orders of support may exist which provide for payments of different amounts"]; *Thompson v. Thompson*, 366 N.W.2d 845, 848 (S.D.1985) [endorsing a South Dakota court's modification of a Wyoming support order but recognizing that under RURESA "such an order does not modify the out-of-state support order and is prospective in effect only."]. *See generally*, Jane H. Gorman, Note, *Stemming the Modification of Child Support Orders by Responding Courts: A Proposal to Amend RURESA's Antisupersession Clause*, 24 U. MICH. J.L. REFORM 405, 412–13 (1991). Thus, under both URESA and RURESA, a support obligor could fully satisfy the payment terms under a modified support order issued by a responding state court, yet find that he is still subject to judgment in another jurisdiction for arrearages calculated under the original support order. *See, e.g., Jefferson County Child Support Enforcement Unit v. Hollands*, 327 Ark. 456, 939 S.W.2d 302 (1997); *Bobbs v. Cline*, 116 Ohio App.3d 46, 686 N.E.2d 556 (1997); *In re Marriage of Shepherd*, 429 N.W.2d 145, 146 (Iowa 1988); *Kammerman v. Kammerman*, 543 A.2d 794, 795–96 (D.C. 1988).

There was widespread recognition of the difficulties created by the allowance of multiple, subsisting support orders under both URESA and RURESA. Thus, efforts to eliminate them led to the development and adoption of UIFSA.[12] Specifi-

---

ant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.

**11.** *Ainbender v. Ainbender*, 344 A.2d 263, 265 (Del.Super.Ct.1975); *Koon v. Boulder County Dept. of Social Servs.*, 494 So.2d 1126, 1129 (Fla.1986); *State v. McKenna*, 253 Ga. 6, 315 S.E.2d 885, 888 (1984); but some states held that URESA precluded any modification,

*Commonwealth ex rel. Ball v. Musiak*, 775 S.W.2d 524, 526 (Ky.Ct.App.1989); *Bushway v. Riendeau*, 137 Vt. 455, 407 A.2d 178, 182 (1979).

**12.** UIFSA was adopted in Texas, effective as of September 1, 1993, and it replaced the Texas version of the RURESA which was repealed. The Texas enactment of UIFSA was eventually recodified in 1995 from chapter 21 to chapter 159 of the Texas Family Code as a part of the reorganization of that code.

cally, UIFSA establishes the concept of the "continuous, exclusive jurisdiction" of any "initiating tribunal." It seeks to protect the ongoing validity of any child support order from any interference or alteration by any other state's courts so long as one of the parties or the child resides in the initiating state. As one observer noted,

> To redress the problems caused by URESA, UIFSA implements the "one-order system." This means that only one state's order governs, at any given time, an obligor's support obligation to any child. Further, only one state has continuing jurisdiction to modify a child support order. This necessarily requires all other states to recognize that order *and to refrain from modifying it* unless the first state has lost jurisdiction.

Patricia W. Hatamyar, *Interstate Establishment, Enforcement, and Modification of Child Support Orders*, 25 OKLA. CITY U.L.REV. 511, 515–516 (2000) (emphasis added).

In addition to compelling the states to adopt UIFSA by a specified deadline,[13] Congress essentially mandated the creation of the "one-order system" with or without UIFSA in its adoption of the Full Faith and Credit for Child Support Orders Act (the "FFCCSOA") which "requires states to give full faith and credit to child support orders properly issued by other states and to refrain from modifying such orders in the absence of certain limited circumstances." *Id.* at p. 520. Though the FFCCSOA and UIFSA are usually viewed as harmonious, *LeTellier v. LeTellier*, 40 S.W.3d 490 (Tenn.2001); *Peddar v. Peddar*, 43 Mass.App.Ct. 192, 683 N.E.2d 1045 (1997), the FFCCSOA preempts any

state law, including UIFSA, which is inconsistent with its provisions. *Cavallari v. Martin*, 169 Vt. 210, 732 A.2d 739 (1999); *State ex rel. George v. Bray*, 130 N.C.App. 552, 503 S.E.2d 686 (1998).

One primary emphasis of the FFCCSOA is to protect the integrity of any support order issued by an initiating tribunal by tightly restricting the power of any court in a responding state to modify the original decree. Section (e) of § 1738B states as follows:

> (e) Authority to modify orders.—A court of a State may modify a child support order of another State if—
>
> > (1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and
> >
> > (2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or
> >
> > (B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

28 U.S.C. § 1738B(e).

Thus, in the absence of proper consent, the FFCCSOA guarantees that the court issuing the original support decree retains exclusive jurisdiction over the modification of that decree until such time as the child, the obligor, and the obligee no longer reside in that state, and any court in any other state is without subject matter jurisdiction to take any act which constitutes a "modification" of the original order.[14] *Auclair v. Bolderson*, 6 A.D.3d

---

13. *See supra* note 8.

14. 28 U.S.C. § 1738(b) defines a modification as a "a change in a child support order that

892, 775 N.Y.S.2d 121 (N.Y.App.Div.2004); *Mellinger v. Sandoval*, No. 02–CA–11, 2003 WL 21060725 (Ohio Ct.App. April 29, 2003); *Harding v. Harding*, 99 Cal. App.4th 626, 121 Cal.Rptr.2d 450, 458 (2002), *cert. denied*, 537 U.S. 1234, 123 S.Ct. 1365, 155 L.Ed.2d 198 (2003); *State of La. Support Enforcement Servs. v. Beasley*, 801 So.2d 515 (La.Ct.App.2001); *State ex rel. Harnes v. Lawrence*, 140 N.C.App. 707, 538 S.E.2d 223 (2000); *Gentzel v. Williams*, 25 Kan.App.2d 552, 965 P.2d 855 (1998).

The same rule and result apply under the Texas adoption of UIFSA.[15] It provides that a child support order of another state may not be modified unless, *inter alia*, the [Texas] tribunal makes specific findings that: (1) the child, the individual obligee, and the obligor do not reside in the issuing state; and (2) that the non-resident petitioner actually seeks a modification. TEX. FAM.CODE ANN. § 159.611(a) (Vernon Supp.2004). Unless those circumstances exist, a Texas court lacks subject matter jurisdiction to modify the foreign state's child support order. *See Medrick v. Rutherford*, No. 05–00–01102–CV, 2001 WL 840609 (Tex.App.—Dallas July 26, 2001, no pet. h.) ["Once a court having jurisdiction enters a support decree, it is the only tribunal entitled to modify the decree as long as it retains continuing, exclusive jurisdiction under the Act. Another state, while required by UIFSA to recognize and enforce the existing decree, has no power under the UIFSA to modify the original decree or enter a support order at a different level as long as one of the parties remains in the issuing state."]; *see also Link v. Alvarado*, 929 S.W.2d 674, 676–77 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); *Thompson v. Thompson*, 893 S.W.2d 301 (Tex.App.—Houston [1st Dist.] 1995, no writ). Similar conclusions have been reached in UIFSA decisions in other states. *See also, LeTellier*, 40 S.W.3d 490; *State ex rel. Freeman v. Sadlier*, 586 N.W.2d 171 (S.D.1998); *In re Marriage of Zinke*, 967 P.2d 210 (Colo.Ct. App.1998).

The evidence in this case establishes that, under both the FFCCSOA and UIFSA, the issuing court in California in 1996 retained "continuing, exclusive jurisdiction" over the child support order involving the Debtor's two minor children. The obligee (or in FFCCSOA terms, the "individual contestant") was at that time still a California resident who utilized a California support enforcement agency to coordinate enforcement of that decree in a Texas court. There is also no evidence to suggest that the children ever vacated California. There is no evidence that the obligee ever requested nor consented to any modification of the California decree by the Texas court or took any other action which would have affected, let alone compromise, the continuing, exclusive jurisdiction of the California court.[16] These are precisely the

affects the amount, scope or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order."

15. Since the Texas judgment germane to this case was issued subsequent to the Texas adoption of the UIFSA, the UIFSA controls the determination of this dispute. *Cowan v. Moreno*, 903 S.W.2d 119 (Tex.App.-Austin 1995, no writ) [finding that, for the purposes of invoking its registration sections, the UIFSA supplied the available remedies in a Texas enforcement action occurring subsequent to September 1, 1993, even though the original decree from the originating state was entered prior to that time]; *accord, Neal v. Office of the Attorney General*, No. 05–95–01258–CV, 1997 WL 122236 (Tex.App.—Dallas March 19, 1997, no writ).

16. California's adoption of UIFSA is codified in its Family Code, including its retention of continuing, exclusive jurisdiction over child support orders. CAL. FAM.CODE ANN. § 4909 (West Supp.2004).

circumstances for which the protection of exclusive jurisdiction under the FFCCSOA and UIFSA were designed. Under such circumstances, the 321st Judicial District Court of Smith County, Texas had no subject matter jurisdiction to take any action in August 1996 constituting a modification of the California support order, including any declaration of an arrearage amount less than or inconsistent with California law.

The lack of subject matter jurisdiction by the Texas court in August 1996 is fatal to the judgment which it ultimately rendered. "[S]ubject matter jurisdiction is essential to a court's power to decide a case." *The M.D. Anderson Cancer Center v. Novak*, 52 S.W.3d 704, 708 (Tex.2001). It "is not presumed and cannot be waived," *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 n. 2 (Tex.1996), and any judgment issued by a Texas court without subject matter jurisdiction is void. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990).[17]

Because the August 1996 judgment issued by the Texas court is void for lack of subject matter jurisdiction, it obviously cannot serve as the foundation for the Debtor's objection that all arrearages arising from the California child support decree in favor of the Claimant have been satisfied. While the amounts paid by the Debtor pursuant to the 1996 Texas decree were properly credited to the obligation arising from the child support decree, the priority claim presented by the Claimant for payment in this case remains due and unpaid and must be addressed by any Chapter 13 plan sought to be confirmed by the Debtor in this case.

Accordingly, the Court concludes that the Debtor's Objection to Proof of Claim No. 5 Filed by the Department of Child Support Services, County of Orange, California is hereby denied and such proof of claim is allowed as a priority claim in the filed amount of $28,765.58. Further, the confirmation of the Debtor's proposed Chapter 13 plan must be denied since it fails to provide for the Claimant's priority claim as required by 11 U.S.C. § 1322(a)(2). This memorandum of decision constitutes the Court's findings of fact and conclusions of law[18] pursuant to FED. R.CIV.P. 52, as incorporated into contested matters in bankruptcy cases by FED. R. BANKR.P. 7052 and 9014. Separate orders will be entered which are consistent with this opinion.

---

**17.** Any judgment issued by a federal court without subject matter jurisdiction would also be void. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir.1999) ["A judgment entered by a court lacking subject matter jurisdiction is void and is not entitled to res judicata effect."]; *see also, Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) [holding that, as to subject matter jurisdiction, "the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings."].

**18.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.