OPINION OF THE COURT
Alma Cordova, J.
This case raises an issue of first impression as to whether the enactment of the Full Faith and Credit for Child Support Orders Act (FFCCSOA) (28 USC § 1738B, Pub L 103-383) supersedes the Uniform Support of Dependents Law (USDL) article 3-A of the Domestic Relations Law.
These cross objections were made to an order of dismissal *422 entered by the Hearing Examiner on December 12, 1994. As follows, petitioner’s objections are denied and this USDL proceeding is thereby dismissed.
STATEMENT OF FACTS
Petitioner mother, Isabel M., filed the underlying petition on October 19, 1993 in Florida seeking an order of support for one child, from respondent father Thomas M. who now resides in New York.
Prior to the commencement of this proceeding, the parties lived in Pennsylvania with their five children. On August 19, 1992, a divorce decree was entered which provided that petitioner shall have custody of four of the children and respondent shall have custody of one child. An order of child support in the amount of $250 per week was entered.
On or about August 1992, petitioner relocated to Florida with the four children. Sometime thereafter in late 1992, the parties’ minor children, with the exception of the youngest child, moved back to Pennsylvania to live with respondent. To date, respondent maintains dual residency in Pennsylvania and in New York. Respondent’s four children also live in Pennsylvania.
On or about January 8, 1993, a modification of the support order was granted inasmuch as respondent was supporting four children. This modification was affirmed by the Court of Common Pleas in Pennsylvania.
On or about January 14, 1994, petitioner filed an appeal to the Superior Court in Pennsylvania which was subsequently denied in August 1994.
On October 20, 1994, Congress enacted the FFCCSOA which requires that State courts afford "full faith and credit” to child support orders issued in other States and refrain from modifying or issuing contrary orders except in limited circumstances.
Respondent, thereafter, made an oral motion to dismiss the petition pursuant to the above statute. Both parties were directed to submit memoranda of law.
After the submission of memoranda of law by the parties, the Hearing Examiner dismissed the petition holding as follows: "pursuant to directive dated November 23, 1994 by Administrative Judge of the Uni[fi]ed Court System the 'Full Faith and Credit for Child Support Orders Act’ supersedes the *423 provisions of New York’s USDL to the extent that the USDL provides broader authority for courts to modify.” Additionally, the Hearing Examiner held that the order and modification were fully litigated by the parties in Pennsylvania which continues to have jurisdiction pursuant subdivisions (c) and (d) of 28 USC § 1738B; and that the court in New York does not have the authority to modify the order of support pursuant to subdivision (e) of said statute.
Petitioner now objects on two grounds. First, petitioner claims that she has the right to apply for a new order of support and pursue other remedies under the USDL (Domestic Relations Law art 3-A); second, petitioner states that the FFCCSOA does not apply since it was not intended to be retroactive and since petitioner is not seeking to modify the order.
Respondent, in agreement with the Hearing Examiner’s decision, submits that the Pennsylvania courts have expressly retained jurisdiction by the fact that there was a pending appeal; and that the newly enacted statute supersedes New York’s USDL and should be applied retroactively.
THE LAW
An analysis of the two acts which appear to be in conflict— the USDL (Domestic Relations Law art 3-A) and the FFCCSOA (28 USC § 1738B) — is discussed below.
1. Uniform Support of Dependents Law.
The USDL was enacted originally in 1949 and revised and added to Domestic Relations Law article 3-A in 1958. The USDL provides procedures for the enforcement of familial support obligations when the obligor is located in a State, or county within New York, different from the dependents. (Domestic Relations Law § 30; Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 30, at 168.) It is New York’s equivalent to the Uniform Reciprocal Enforcement of Support Act (URESA) and the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) which, in one form or the other, is in effect in every State, except New York. (Sobie, Practice Commentaries, op. cit.) Since there are essentially no differences between the three acts, there is reciprocity between New York and the other States. (Id.)
The purpose of the USDL is to provide a less costly and time-consuming method of enforcing familial support obliga *424 tions. (Sobie, Practice Commentaries, op. cit.) The petitioner does not need to go to the obligor’s State or county, nor does the petitioner need to use long-arm jurisdiction and a subsequent enforcement proceeding in a different State. (Id.) Moreover, the petitioner is not precluded from seeking other relief since the USDL specifically provides that article 3-A "shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter.” (Domestic Relations Law § 41.)
2. Full Faith and Credit for Child Support Orders Act.
The FFCCSOA (28 USC § 1738B) was enacted by the United States Congress in 1994
"(1) to facilitate the enforcement of child support orders among the States;
"(2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and
"(3) to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders.” (Pub L 103-383 § 2, 108 US Stat 4064.) Section 1738B (a) states that "The appropriate authorities of each State — (1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and (2) shall not seek or make a modification of such an order except in accordance with subsection (e).”
3. Preemption.
The question is whether a USDL proceeding falls within the umbrella of the FFCCSOA.
As noted above, a USDL proceeding is an additional or alternative remedy. (Barone v Hill, 148 AD2d 139, 141 [4th Dept 1989]; LaBoy v Hernandez, 131 AD2d 485 [2d Dept 1987].) It is not intended to modify or supersede any already existing support obligations and is not affected by any other support proceedings, orders or judgments (LaBoy v Hernandez, supra, at 485). Therefore, at first glance it seems that the USDL does not fit within the framework of section 1738B, since the Federal statute, by its terms, appears to contemplate only existing support orders.
However, further inspection of the statute leads to a different conclusion. In section 1738B (b), "modification” is defined *425 as "a change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order. ” (Emphasis added.) While this language may be ambiguous, it can easily be construed to include an order made pursuant to a USDL proceeding.
Even though the USDL is considered an alternative or additional remedy and not a modification, an order made pursuant to a USDL proceeding does change an existing order in the sense that the obligor may be required to provide more or less money to the dependents. Furthermore, the language "or otherwise is made subsequent to” can also be deemed to include a new order, such as one made according to a USDL proceeding. Furthermore, it does not seem logical that Congress would enact section 1738B and not include within its scope orders made under the USDL, URESA, or RURESA.
An examination of the legislative history behind the enactment of section 1738B also leads to this conclusion. Both the Senate and the House of Representatives determined that there was a need for uniformity among the States as to the enforcement of child support orders. In its report that accompanied the bill containing section 1738B, the House of Representatives noted that hearings held before various subcommittees of the Congress "have demonstrated the inadequacy of existing State law to protect the interests of children and custodial parents in enforcing child support orders where the non-custodial parent lives in a different State.” (HR Rep No. 206, 103rd Cong, 1st Sess [1993].) The report also pointed out that "the Full Faith and Credit clause of Article IV of the Constitution, and implementing legislation adopted by Congress, have generally not been construed to apply to orders where the matter involves an ongoing obligation and the court retains the power to modify its decision.” (Id.)
The Senate found that "a large and growing number of child support cases involve disputes across State lines, and the laws by which courts determine their authority to establish and modify child support orders are not uniform.” (S Rep No. 361, 103rd Cong, 2d Sess [1994], US Code Cong & Admin News 3259.) The Senate report stated that "[t]his lack of uniformity * * * has led to a number of deficiencies in child support collection * * * [and] encourages non-custodial parents to relocate outside the States where their children and custodial *426 parents reside, in order to avoid the jurisdiction of the courts of such States.” (Id., at 3262.)
As a result of these and other associated problems, Congress invoked its authority under the Full Faith and Credit Clause of article IV, the Commerce Clause, the Due Process Clause of the 14th Amendment, and the General Welfare Clause to enact section 1738B. (Pub L 103-383 § 2, 108 US Stat 4063; HR Rep No. 206; S Rep No. 361.) It would be incongruous for section 1738B to apply only to the modification of an existing child support order. If that were the case then a lack of uniformity would still exist. Petitioners would simply use the USDL to seek their "modifications”. The existing order would, in effect, be useless. This would totally undermine the purpose for enacting section 1738B, and the desired result.
This leads to the conclusion that because the USDL, and the URESA and RURESA directly conflict with the purposes of section 1738B, by operation of the Supremacy Clause, they are preempted by section 1738B. This is analogous to the enactment of 28 USC § 1738A, which provides for full faith and credit to be given to child custody determinations, and its impact on Domestic Relations Law article 5-A, the Uniform Child Custody Jurisdiction Act (UCCJA).
The UCCJA has been enacted by all 50 States, and was designed to promote cooperation between States regarding child custody disputes. (Domestic Relations Law § 75-b.) Some of the goals of the UCCJA are to "discourage continuing controversies over child custody” to "deter abductions and other unilateral removals of children” and to "facilitate the enforcement of custody decrees of other states”. (Domestic Relations Law § 75-b [d], [c], [g].) With similar goals in mind, and with the need for uniformity, Congress enacted section 1738A. (Pub L 96-611 § 7, 94 US Stat 3569 [1980].)
New York case law has consistently held that where the UCCJA and section 1738A conflict, through the operation of the Supremacy Clause, State law is preempted by section 1738A. (Matter of Michael P. v Diana G., 156 AD2d 59, 64-65 [1st Dept 1990], lv denied 75 NY2d 1003 [1990]; Farrell v Farrell, 133 AD2d 530 [4th Dept 1987]; Enslein v Enslein, 112 AD2d 973 [2d Dept 1985]; Koons v Koons, 161 Misc 2d 842, 846 [Sup Ct, NY County 1994]; Mancusi v Mancusi, 136 Misc 2d 898, 901-902 [Fam Ct, Westchester County 1987].)
In most situations the UCCJA and section 1738A conform with each other. (Domestic Relations Law § 75-b; Sobie, Prac *427 tice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 75-b, at 291.) Therefore the UCCJA can still operate. The same may not be true of the USDL. Section 1738B and the USDL are at odds with each other. While the FFCCSOA provides for the uniform enforcement of child support orders and prohibits modifications except under certain circumstances, the USDL, while not providing for modifications of existing orders, in effect, allows for the disregard of existing orders. This is antithetical to the purpose of the FFCCSOA.
The Legislature was aware of the USDL proceedings when it enacted the FFCCSOA. If the intent of the Legislature was to preclude USDL proceedings from this statute, it could have made specific provisions for such preclusions. (See generally, McKinney’s Cons Laws of NY, Book 1, Statutes § 74; Virginia E. E. v Alberto S. P., 108 Misc 2d 565 [Fam Ct 1981]; Cuthbert S. v Linda S., 161 Misc 2d 372 [Fam Ct 1994].)
Based upon the foregoing analysis, the court finds that the enactment of the FFCCSOA has a direct impact on the operation of the USDL. In situations where the FFCCSOA and the USDL are in direct conflict with each other, the FFCCSOA will supersede and preempt the USDL.
4. Retroactive Application of the FFCCSOA.
Having found the FFCCSOA applicable to USDL proceedings, the court must now decide whether the FFCCSOA should be applied retroactively.
The FFCCSOA was enacted on October 20, 1994. This USDL proceeding was commenced on October 19, 1993 and finalized on December 12, 1994. While the statute is silent on the issue of retroactivity and very little can be gleaned on this issue from the legislative history, the court finds that consistent with New York common law, the retroactive application of FFCCSOA would further the purposes and goals of the statute by facilitating the resolution of interstate jurisdictional conflicts regarding the paramount interest of child support.
In People v Pepper (53 NY2d 213 [1981], cert denied 454 US 967 [1981]), the Court of Appeals restated the common-law rule in New York on retroactivity, which is that "all cases on direct appeal must be decided in accordance with any newly declared but conceptually existent principles.” The Court went on to set forth guidelines for determining whether common-law convention should be adhered to or deviated from in a *428 particular case. The Court stated three factors enunciated in its earlier decision, People v Morales (37 NY2d 262, 269 [1975]), to aid courts in reaching this determination: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.” (People v Pepper, supra, at 220; Matter of Enrique M., NYLJ, Aug. 15, 1994, at 32, col 6.)
Clearly, retroactive application of the FFCCSOA to these proceedings will serve the intended purposes of the statute insofar as it will prevent the issuance of conflicting child support orders among different States. By following the appropriate rules and guidelines as set forth in the FFCCSOA, this court can readily decide if it has authority to "modify” an existing order of support thereby discouraging any further interstate conflicts. Also, the paramount interest of children in need of harmonious support orders will be safeguarded.
Additionally, there is strong public policy in New York supporting the retroactive application of child support legislation to pending matters — as the courts found when the Child Support Standards Act (L 1989, ch 567) was enacted into law (see, Family Ct Act § 413; Domestic Relations Law § 240). As the Second Department so aptly stated in Matter of Fetherson v Fetherson (172 AD2d 831, 834 [2d Dept 1991]), "[i]t has been recognized that in light of the paramount interests of children in need of support and because 'the CSSA represents important public policy, it should be applied to matters which commenced prior to the effective date of the act but which have not yet been finally decided’ ”. (See also, Pederson v Pederson, 176 AD2d 729, 731 [2d Dept 1991]; Butler v Butler, 171 AD2d 985 [3d Dept 1991]; Gelb v Brown, 163 AD2d 189, 191 [1st Dept 1990].)
Likewise, resolving jurisdictional controversies as guided by uniform Federal standards serves an equally compelling reason for retroactively applying the FFCCSOA.
Therefore, since a final judgment had not been reached prior to the effective date of the FFCCSOA, it is proper to apply the FFCCSOA. (See, Butler v Butler, supra, at 989.)
5. Jurisdiction to Modify the Order of Support.
The final issue presented is whether a pending appeal of a child support order entered in Pennsylvania on January 8, *429 1993 grants that State "continuing exclusive jurisdiction” under the FFCCSOA.
This court finds no statutory basis under the FFCCSOA to support the proposition that a pending appeal continues exclusive jurisdiction in Pennsylvania since a pending appeal is not a factor to consider in deciding whether to exercise jurisdiction over out-of-State support orders.
Indeed, the fact that Congress included "temporary orders” of support in the category of out-of-State orders that another State can subsequently modify demonstrates a clear intent to allow orders to be modified notwithstanding any finality to those initial proceedings.
Congress was quite explicit in setting out the necessary conditions for allowing a State to "modify” a support order issued in another State. Section 1738B (d) defines "Continuing Jurisdiction” as follows: "A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child’s State or the residence of any contestant unless the court of another State, acting in accordance with subsection (e), has made a modification of the order.”
Consistent with this definition, Pennsylvania still has continuing exclusive jurisdiction. Although the subject child and petitioner mother reside in Florida, the respondent father continues to have residency in Pennsylvania and in New York.
New York can only "modify” the existing order of support in accordance with section 1738B (e) as follows:
"A court of a State may make a modification of a child support order with respect to a child that is made by a court of another State if—
"(1) the court has jurisdiction to make such a child support order; and
"(2) (A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child’s State or the residence of any contestant; or
"(B) each contestant has filed written consent to that court’s making the modification and assuming continuing, exclusive jurisdiction over that order.” (Emphasis added.)
This court finds that New York does not meet the criteria under subdivision (e) to enable it to entertain this *430 USDL proceeding. Even though this court has jurisdiction over this proceeding as the "responding state” of a USDL proceeding initiated in Florida (see, Domestic Relations Law § 31 [10]; § 34 [2]), nevertheless, the respondent herein maintains residency in Pennsylvania and in New York. Respondent’s four other children live in Pennsylvania. Neither party has filed a written consent to this court making the modification. Therefore, Pennsylvania still has "continuing exclusive jurisdiction” to modify the order of support.
For the reasons articulated above it is hereby ordered that petitioner’s objection to the application of the FFCCSOA to this proceeding is denied; ordered that petitioner’s objection to retroactive application of the FFCCSOA is denied; ordered that respondent’s request that Pennsylvania retain jurisdiction is granted; ordered that respondent’s request that the FFCCSOA be applied retroactively is granted; and ordered that this USDL proceeding is dismissed pursuant to the above decision and order.