OPINION OF THE COURT
Joan S. Kohout, J.
The respondent Floyd J. has filed written objections to an order of the Hearing Examiner dated November 8, 1999 under docket No. F-1342-99, denying his motion to establish a Monroe *449 County modified child support order dated March 17, 1992 as the “controlling order” for purposes of the Uniform Interstate Family Support Act (hereinafter UIFSA; Family Ct Act art 5-B). The petitioner has not filed a rebuttal to the respondent’s objections.
The court has reviewed the audiotaped transcript of the hearing held on September 22, 1999, the respondent’s motion, the correspondence in opposition submitted by counsel for the Monroe County Child Support Enforcement Unit and from counsel for the Brown County, Wisconsin, Child Support Agency. For the reasons which follow, the court grants Mr. J.’s objections and establishes the Monroe County child support order dated February 1, 1991, as modified on March 17, 1992, to be the controlling order under UIFSA.
PROCEDURAL BACKGROUND
On April 10, 1990 Rose Marie W., then a resident of Wisconsin,* filed a petition in Brown County, Wisconsin, under Wisconsin’s Uniform Support of Dependents Law (USDL) seeking support for the parties’ children: Adam David J., born on November 9, 1979; Rose Marie J., born on January 19, 1984; Aaron Gilbert J., born on February 27, 1986; and Anthony Gabriel J., born on December 28, 1987. This request was forwarded to New York, where Mr. J. lived, on August 10, 1990 pursuant to the Uniform Reciprocal Enforcement of Support Act.
On February 1, 1991 a Hearing Examiner in Monroe County, New York, made what was to become the first order between the parties. This child support order directed Mr. J. to pay $100 per week in current child support. Retroactive support of $2,400 was also established to cover the period from August 16, 1990 to February 1, 1991.
Four months after the Monroe County order was made, the parties were divorced in Wisconsin. On June 4,1991 the Brown County, Wisconsin, Circuit Court made a judgment of divorce, which included a direction that Mr. J. pay $478 per month in child support for the children, effective May 7, 1991. This was the second support order.
On November 18, 1991 Mr. J. returned to Monroe County Family Court seeking a reduction in his child support obliga *450 tion. On March 17, 1992 the third order was made, this time reducing Mr. J’s. child support obligation to $25 per month effective November 18, 1991.
On or about July 15, 1996 Ms. W. registered the Wisconsin judgment of divorce as permitted by New York’s USDL, Domestic Relations Law former § 37-a.
Mr. J. filed a second petition for a reduction in his child support obligation on April 22, 1999. During those proceedings, counsel for Mr. J. filed a motion seeking to establish the Monroe County $25 per month order of March 17, 1992 as the controlling order under UIFSA. Both counsel for Ms. W. and for the Brown County, Wisconsin, Child Support Agency submitted written opposition to Mr. J.’s motion. The Hearing Examiner determined that since Wisconsin’s order was the only one currently being enforced, it was the “controlling order” under UIFSA. The Hearing Examiner, therefore, denied Mr. J.’s motion, resulting in the written objections now before the court.
CONCLUSIONS OF LAW
The UIFSA, enacted as Family Court Act article 5-B (L 1997, ch 398, eff Dec. 31, 1997), replaced the USDL previously found in Domestic Relations Law article 3-A. UlFSA’s enactment signaled a sweeping and dramatic change in the manner in which interstate child support matters are adjudicated across the country. Under the USDL, mobile custodial parents, or agencies on their behalf, were free to petition for child support as parents moved from State to State, leaving courts with the daunting task of addressing competing and often inconsistent child support orders. The USDL contained no instructions on how to reconcile competing orders, leaving noncustodial parents, like Mr. J., caught in a bureaucratic nightmare where money is collected under more than one order.
UIFSA discourages, if not prohibits, the issuance and enforcement of orders by multiple States by establishing jurisdictional, registration, enforcement and modification provisions that give courts and parties guidance as to which State has authority to make support orders for the family.
In order to determine which State should make child support decisions in a particular case, UIFSA declares that once a State makes a support order it has “continuing, exclusive jurisdiction” as long as an important party continues to reside in. the State. (Family Ct Act § 580-205 [a] [1].) Jurisdiction may be transferred to another State if all parties consent or when the *451 order is validly modified by another State. (Family Ct Act § 580-205 [a], [b], [c].)
When two are more orders are made by different States, UIFSA allows a party to seek a determination of the “controlling order.” (Family Ct Act § 580-207.) In sorting out competing orders, the statute sets up a list of priorities. First, a court must look to the order from the State that has continuing exclusive jurisdiction. (Family Ct Act § 580-207 [b] [1].) If more than one State would have continuing exclusive jurisdiction, the order issued by the child’s current home State controls. If an order has not been issued in the current home State of the child, the most recently issued order controls and must be so recognized. (Family Ct Act § 580-207 [b] [2].)
Although the list of priorities for multiple orders seems straightforward, application to individual cases can be complex.
For example, in the case of the W./J. orders, all of the orders were made under prior law and retroactive application of UIFSA creates some unexpected results, including the lack of enforcement of the Wisconsin order that was properly registered in New York and appeared enforceable at the time.
When UIFSA was first approved by the New York State Legislature it applied only prospectively. However, in 1998 the Legislature amended Family Court Act § 580-904 to make UIFSA apply to all orders made under the USDL or any substantially similar law. (L 1998, ch 214, § 36, eff Dec. 31, 1997.) This had the far-reaching effect of applying UIFSA’s continuing jurisdiction and controlling order procedures to orders made when the laws were different, effectively vacating prior orders that were valid when made. (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 580-207, at 232.) Several other jurisdictions have reached a similar result. (See, Child Support Enforcement Div. v Brenckle, 424 Mass 214, 675 NE2d 390 [1996]; Welsher v Rager, 127 NC App 521, 491 SE2d 661 [1997]; see also, State of Utah, Dept. of Human Servs. ex rel. State of Pa. v Jacoby, 975 P2d 939 [Utah 1999], and Department of Human Servs. v Leifester, 721 A2d 189, 191 [Me 1998], construing UIFSA as remedial.)
Moreover, even though UIFSA’s Federal counterpart, the Full Faith and Credit for Child Support Orders Act, is silent with respect to retroactivity, several jurisdictions, including New York, have construed the statute as remedial in nature and, as such, subject to retroactive application. (See, Matter of Isabel M. v Thomas M., 164 Misc 2d 420 [Fam Ct, Kings County 1995]; see also, Twaddell v Anderson, 136 NC App 56, 523 *452 SE2d 710 [1999].) Moreover, New York’s Legislature has clearly expressed its intent to have UIFSA apply retroactively. (Family Ct Act § 580-904; cf., Bowen v Georgetown Univ. Hosp., 488 US 204, 208 [1988].)
Applying UIFSA’s provisions to the facts of this case, New York’s continuing exclusive jurisdiction was established when the first Monroe County order was made dated February 1, 1991. Mr. J.’s continued residence in New York gave New York ongoing jurisdiction. The parties have not agreed to transfer jurisdiction to another State, nor has any other State properly modified New York’s order. (See, Family Ct Act § 580-205 [b], [c]; see also, Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 580-205, at 225.) The Wisconsin divorce decree did not constitute a modification of the New York order, but instead was an independently made decree.
Nor does the mere fact of the divorce decree’s registration in New York for enforcement confer “controlling order” status upon it, as urged by Wisconsin counsel. Nothing in UIFSA’s registration provisions supports that contention. Likewise, contrary to the Hearing Examiner’s findings, the fact that the Wisconsin order is the only order that has been enforced to date does not make it the “controlling order” under UIFSA.
In closing, the court is not unmindful of the practical implications for the parties in this case of its ruling in this uncharted area of the law. The significant reduction in Mr. J.’s longstanding child support obligation will no doubt have an impact upon the parties for some time to come. The court hopes that this ruling will provide some degree of guidance to other parties finding themselves in a similar situation in the future.
Accordingly, Mr. J.’s objections are granted, the Monroe County order of March 17, 1992 is established as the controlling order under UIFSA, and Mr. J.’s current support obligation is reduced to the sum of $25 per month effective the date of the filing of his petition, April 22, 1999, with retroactive support to be adjusted accordingly to that date.

 Ms. W. is now a resident of Minnesota. Neither party resides in Wisconsin, although Wisconsin continues to enforce its child support order and to collect money from Mr. J.