No. 120,543

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of

GINA NOEL HENSON, n/k/a BISH,
*Appellee*,

and

CHRISTOPHER ROBERT HENSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

Subject matter jurisdiction may be raised at any time, even for the first time on appeal.

2.

An order made by a court that lacks subject matter jurisdiction is a void order.

3.

A party's voluntary payments under a void judgment do not amount to acquiescence under the law because a void judgment has no legal force or validity.

4.

A K.S.A. 60-260(b) motion must generally be filed "within a reasonable time." But a void judgment may be set aside at any time.

1

5.

The Full Faith in Credit for Child Support Orders Act preempts state law with respect to the modification of child support orders in a Uniform Reciprocal Enforcement of Support Act enforcement action.

6.

The Full Faith in Credit for Child Support Orders Act establishes a general rule requiring a state to enforce the child support order of another state. See 28 U.S.C. § 1738B(a)(1). It further prohibits a state from modifying another state's child support order if the issuing state has "continuing, exclusive jurisdiction" over the matter.

7.

The issuing state retains continuing, exclusive jurisdiction to modify child support orders as long as one of the parties to the order continues to reside in the initiating state, unless all parties file written consent to jurisdiction in another state.

8.

Under the Full Faith in Credit for Child Support Orders Act, modifications are prohibited unless the exceptions are satisfied.

9.

A void judgment is an absolute nullity and cannot serve as the basis for a valid judgment.

10.

A party seeking attorney fees on appeal must comply with Supreme Court Rule 7.07(b)(2) (2020 Kan. S. Ct. R. 50). An attorney's verification does not meet that Rule's requirement of an affidavit.

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed April 17, 2020. Reversed and remanded with directions.

*Thomas C. McDowell*, of McDowell Chartered, of Wichita, for appellant.

*Charles F. Harris*, of Law Office of Charles F. Harris, of Wichita, for appellee.

Before GARDNER, P.J., BUSER, J., and BURGESS, S.J.

GARDNER, J.:  In this post-divorce case, Christopher Robert Henson appeals the district court's decisions about child support arrearages, medical reimbursements, and attorney fees owed to his ex-wife Gina Noel Bish. Chris also challenges a default judgment entered against him in 2005. Chris argues that because the district court's decisions were based on a void judgment ordered by a California court without subject matter jurisdiction, they must be found void. We agree. Because the district court's decisions were based on a void judgment, we reverse the district court's decision and remand.

FACTUAL AND PROCEDURAL BACKGROUND

Chris and Gina divorced in 1991. They have three children together. Their youngest child turned 18 years old in 2009. At the time of their divorce, Chris, Gina, and their children lived in Kansas.

*Kansas issues original child support orders.*

In a 1991 divorce decree, the district court awarded Gina primary residential custody of all three children. The district court also ordered Chris to pay child support in the amount of $226 per month through September 1991 and $300 per month after that.

3

Chris was also ordered to pay 50% of the children's prescriptions, medications, and medical bills.

Sometime in 1993 or 1994, Chris moved to California and found a job as a legal assistant. Gina remained in Kansas. But Chris failed to notify the district court or Gina of his move or change in income. He did, however, continue to make some child support payments.

*California enforces the Kansas orders in 1994.*

In August 1994, Gina moved to enforce Chris' support obligations, so an action commenced under the Uniform Reciprocal Enforcement of Support Act (URESA), K.S.A. 23-451 et seq. See L. 1994, ch. 301, § 86, effective July 1, 1995. By the time Gina filed her motion, however, Chris had an arrearage in past due child support. The district court trustee began an action to enforce the Kansas child support order and to obtain medical reimbursement under URESA. Once opened, the case was forwarded to the Child Support Office of the District Attorney in San Francisco. The Kansas support order was registered there in December 1994. Chris then began paying $300 per month in child support pursuant to an income withholding order issued in the California action.

*California modifies the Kansas orders in 1996.*

In May 1996, the district court trustee, on Gina's behalf, asked the California court to modify the child support amount and require payment for medical bills and insurance. The California court assessed the parties' incomes and modified the Kansas order by:

- increasing Chris' child support obligation from $300 to $948 per month;
- requiring Chris to pay an additional $50 per month toward the arrearages; and

4

- finding each party responsible for half of all unreimbursed or uninsured health expenses.

Chris did not appeal this December 1996 order.

*Chris moves to Colorado.*

After the California court modified Chris' support obligation in December 1996, Chris made semi-regular child support payments until 2005. By 2002, Chris had moved from California to Denver, Colorado. Again, Chris failed to notify the district court or Gina of his move. Gina remained in Kansas. Because Chris had moved to Colorado, California stopped collecting support and closed its case. At that time, its records showed Chris' child support arrearage was $71,687.87.

In October 2002, the Sedgwick County Court trustee sent a notice of intent to issue an income withholding order to Chris' employer in Colorado. The notice showed a total of $400 per month would be withheld—$300 for the child support obligation and $100 for arrearages. That same month, the Department of Child Support Services sent a letter and a copy of the 1996 California order modifying Chris' child support to the trustee's office. Both documents were filed in the district court.

*The Kansas court finds Chris in default and bases the amount of arrearage on the California modification.*

In June 2005, Gina moved to determine that Chris was in arrears for child support in the sum of $73,276.76 and $10,374.82 in unpaid medical expenses. This motion was sent to Chris' last known address as given by his attorney. But Chris claims that he never received the motion. After the motion was filed, Chris' attorney moved to withdraw. The district court held a hearing on both motions, but Chris failed to appear. The district court

5

granted Gina's motion and entered a default judgment against Chris. It found Chris owed $73,019.59 in child support arrearage and $10,374.82 in unpaid medical expenses. Chris claims he never saw the journal entry until after the time passed for filing a notice of appeal, so he never appealed it. The district court, however, determined that Chris had been properly notified.

In August 2005, after Gina and Chris' oldest child turned 18, the district court trustee sent another notice of intent to issue an income withholding order. It specified that $200 would be collected monthly for child support and an additional $200 would be collected monthly for past due support. Chris did not respond to or appeal from this order.

*Colorado enforces the Kansas default judgment.*

In July 2006, the trustee registered the Kansas support order and the Kansas arrearage judgment of $75,419.59 in Colorado for collection by an income withholding order. Chris did not object.

The accrual of child support ended on June 30, 2009, after Gina and Chris' youngest child had turned 18 years old on April 5, 2009. See K.S.A. 2009 Supp. 60-1610(a).

In May 2010, another withholding order began collecting $800 in past due child support from Chris' wages. That continued until January 2014 when Chris moved to set aside the 2005 default judgment.

6

*Chris moves to set aside the Kansas 2005 default judgment.*

After a hearing on Chris' 2014 motion to set aside the default judgment, the district court denied it. But the district court modified the 2005 default judgment so it could determine the amount of arrears after December of 1996, when the California court modified the Kansas support order. The district court ordered Chris to contact the California court to determine the amount, if any, of that arrearage.

Instead, Chris filed a notice of appeal from that order. But this court filed a show cause order, questioning our jurisdiction to review the decision. After Chris failed to respond to the show cause order, we dismissed his appeal in March 2015.

After we dismissed his appeal, Chris moved to terminate the income withholding order. He argued that he should not be required to pay any arrearage until he complied with the district court's order to determine the amount of arrearage owed under the California decision. Chris claimed he had overpaid his support arrearages by over $75,000 because he was responsible for his child support obligations only until December 1996, when the California court modified the Kansas support order. The district court denied Chris' motion and left the income withholding order in place.

*Gina moves to adopt the California order; Chris argues it is void.*

Gina apparently took it upon herself to get records from the California case because Chris had failed to do so. In August 2016, after obtaining the California records, Gina moved to determine updated arrearage amounts and to adopt the modified California order (Gina's 2016 motion). Chris responded that the district court lacked jurisdiction to enforce the California modified support order, that the Uniform Interstate Family Support Act (UIFSA) provisions prohibited enforcement of the California order, and that he had overpaid his Kansas support obligations. In a supplemental response,

7

Chris argued the California court lacked jurisdiction to modify the Kansas support order under the Full Faith in Credit for Child Support Orders Act (FFCCSOA) and UIFSA because Kansas had maintained exclusive and continuing jurisdiction over the case since its initiation in 1991.

At the hearing on Gina's 2016 motion, Gina offered and the district court admitted a California account summary document showing Chris owed $71,867.83 in unpaid child support. The district court issued a memorandum opinion in August 2018, affirming its previous rulings, including the 2005 default judgment and its support and arrearage determinations. The district court also found that Chris had waived his FFCCSOA defense by failing to assert it at the 2014 hearing on his motion to set aside the default judgment. In a supplemental order filed in September 2018, the district court held that Chris owed:  $88,631.88 in child support arrearage; $24,007.05 for the 2005 medical expenses judgment; and $7,486.75 on outstanding judgments for attorney fees.

In November 2018, the trustee issued another notice of intent to issue an income withholding order for $2,500 per month for past due support. Chris objected. The district court held a hearing, overruled Chris' objection, and authorized the withholding order, which remains in effect.

Chris now appeals the district court's 2014 decision on his motion to set aside the default judgment, this court's 2015 dismissal of his appeal from that case, the district court's 2015 denial of his motion to terminate the income withholding order, and the district court's two 2018 decisions.

8

## THE DISTRICT COURT ERRED IN FINDING THE CALIFORNIA COURT HAD JURISDICTION TO MODIFY THE CHILD SUPPORT ORDER.

This appeal centers on the district court's 2005 default judgment, which accepted Gina's child support arrearage numbers that were calculated, at least in part, using the California court's modified support order. Chris first argues that the California modification was void because the California court lacked subject matter jurisdiction under FFCCSOA and UIFSA to modify the Kansas order. Chris then argues that the Kansas district court could not enter a default judgment against him in Kansas for child support arrearages based on the void California modification order, so those Kansas decisions are also void.

The district court held that Chris' preemption claim was untimely and that the FFCCSOA did not preempt California's application of URESA in December 1996, when California modified the Kansas child support order.

### *Standard of review*

Whether jurisdiction exists is a question of law over which our scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel; a failure to object to the court's jurisdiction does not invest the court with the requisite subject matter jurisdiction. *Goldman v. University of Kansas*, 52 Kan. App. 2d 222, 225, 365 P.3d 435 (2015). Likewise, statutory interpretation presents a question of law over which this court has unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

9

*The district court erred in finding Chris' jurisdictional claim untimely.*

Chris first raised the issue of jurisdiction in his 2014 motion to set aside the 2005 default judgment. At the evidentiary hearing on the motion, Chris cited K.S.A. 23-36,205, arguing that California lacked subject matter jurisdiction to modify Chris' support order in December of 1996. He contended that Kansas could enforce its support order only up until November 1996. Alternatively, Kansas could continue to enforce its order after that date but only in the amount of $300 a month total—the amount the Kansas court ordered before the California court improperly modified it to over $300 a month per child. The district court denied Chris' motion. But it also ordered Chris to contact the California court to determine the number of arrearages there. We dismissed Chris' appeal of that order because he failed to answer our show cause order.

Chris never briefed the FFCCSOA preemption and jurisdiction issues until his supplemental response to Gina's 2016 motion. Then, in addition to arguing that Gina's 2016 motion should be denied, Chris repeated his arguments to set aside the 2005 default judgment and find the California judgment void.

Procedurally, Chris' argument seems to be an untimely motion to alter or amend the district court's previous judgment. We understand why the district court may have construed the motion as such. But subject matter jurisdiction may be raised at any time, even for the first time on appeal. *In re Emerson*, 306 Kan. at 33. So the district court erred in refusing to consider Chris' claim.

We are not unsympathetic to the equities apparently underlying the district court's finding that that Chris could not raise this jurisdictional claim so late in the proceedings. Yet, as detailed below, we find no legal or equitable barrier to Chris' claim that California's modified support order is void because it was made by a court that lacked subject matter jurisdiction. See *United States v. Bigford*, 365 F.3d 859, 865 (10th Cir.

10

2004) ("A judgment may . . . be attacked in a collateral proceeding in another jurisdiction on the basis that it was rendered without jurisdiction. ").

*Acquiescence*

Gina first suggests that Chris acquiesced to the void California judgment by paying its required amounts of support, although not as frequently as required. We disagree. "[A] party's voluntary payments to [a void] judgment cannot amount to acquiescence under the law because a void judgment has no legal force or validity." *In re Marriage of Sumpter*, No. 96, 256, 2007 WL 656424, at *6 (Kan. App. 2007) (unpublished opinion) (citing *Sramek v. Sramek*, 17 Kan. App. 2d 573, Syl. ¶ 1, 577, 840 P.2d 553 [1992]. Chris' support payments of the modified amounts do not constitute acquiescence.

*Not within a reasonable time*

Gina next argues that Chris waited more than eight years to try to set aside the default judgment—an unreasonable amount of time. True, a K.S.A. 60-260(b) motion must generally be filed "within a reasonable time." K.S.A. 2019 Supp. 60-260(c); cf. 7 Moore's Federal Practice ¶ 60.25(2), pp. 300-01 (2d ed. 1982). But as this court has noted, the "reasonable time limit" generally means "no time limit" as to void judgments:

> "'Since a federal judgment that is void can be so collaterally attacked, and since the judgment sustaining the collateral attack would have to be given effect in a subsequent 60(b)(4) motion to set the federal judgment aside as void, the "reasonable time" limitation must generally mean no time limit, although there may be exceptional situations where the reasonable time limitation would require diligence on the part of the movant.'"
> *Barkley v. Toland*, 7 Kan. App. 2d 625, 630, 646 P.2d 1124 (1982).

11

So, in *Barkley*, we held that the provisions of K.S.A. 60-260(b)(4) require a court to sustain a motion to set aside a void judgment, regardless of its untimeliness. 7 Kan. App. 2d 625, Syl. ¶ 1. And we have held that a void judgment may be set aside at any time. *In re Marriage of Gerleman*, 56 Kan. App. 2d 578, 583, 435 P.3d 552 (2018); *Sramek*, 17 Kan. App. 2d at 576.

Although "there may be exceptional situations where the reasonable time limitation would require diligence on the part of the movant,'" *Barkley*, 7 Kan. App. 2d at 630, we find no such exceptional circumstances here. We rely on the general rule instead of the exception. "The clear consensus is that a motion made to set aside a void judgment can be made at any time." 7 Kan. App. 2d at 630.

*Law-of-the-case doctrine*

Gina next argues that the law-of-the-case doctrine bars our review of Chris' claim. She contends Chris should have raised his claim in his direct appeal from the district court's 2014 decision.

Whether the law-of-the-case doctrine applies is a question of law over which we have unlimited review. *State v. Parry*, 305 Kan. 1189, 1194, 390 P.3d 879 (2017). The law-of-the-case doctrine generally provides that when a subsequent appeal is brought in the same case, prior issues are generally not reconsidered because the prior decision is the law of the case on all questions involved in the first appeal. 305 Kan. at 1195. Similarly, the law of the case doctrine requires a trial court, acting on remand from an appellate court, to proceed in accordance with the mandate and law of the case as established on appeal. 305 Kan. at 1195.

A panel of this court in *Gerleman* determined that even the issue of voidness may be precluded if it could have been but was not raised in a prior appeal. In so holding, the

12

panel emphasized that "'[a] party may not settle the law of his case by piecemeal before this court, any more than he may settle the facts in that way before the district court. When the case is tried, he must be prepared to present his entire claim, or his entire defense.' [Citation omitted]." 56 Kan. App. 2d at 585. Gina seeks to apply that principle here.

Because Gina argues that Chris should have raised the issue of voidness in his prior appeal, we revisit the relevant facts. As stated above, Chris filed a notice of appeal of the district court's 2014 decision denying his motion to set aside the 2005 default judgment. But that district court's decision appears not to have been final because it required Chris to take further action to determine the amount of arrearage he owed in California. "The term 'final decision' has been construed to mean one which finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court." *Kansas Med. Mut. Ins. Co. v. Svaty*, 291 Kan. 597, Syl. ¶ 5, 244 P.3d 642 (2010); see also K.S.A. 2019 Supp. 60-2102(a)(4) (requiring appeal from a final decision). This is likely why we issued a show cause order to see whether to dismiss Chris' appeal. Gina's response to our show cause order argued the decision was not final. But Chris did not respond to our order, so we dismissed his appeal.

We do not condone Chris' failure to respond to this court's show cause order. But we cannot find that Chris could have raised the issue of voidness in his previous appeal, when the decision he appealed was not final. Not until Gina got the necessary information from the California court was the district court able to issue a final judgment determining the arrearages owed. Chris had failed to do so, despite the district court's valid order to that effect. Under these circumstances, Chris' voidness claim is not barred by the law-of-the-case doctrine.

13

*FFCCSOA preempts URESA.*

We thus consider the merits of Chris' argument. He contends that the FFCCSOA preempted URESA so the California court lacked jurisdiction under FFCCSOA to modify the Kansas support order. Although the district court found this claim untimely, it also made some factual and legal findings about preemption and jurisdiction. It held that California had jurisdiction to modify the support order under URESA—the only law in effect in California in December 1996. The district court then upheld its previous default judgment entered against Chris, using sums based on California's modified support order.

For reasons detailed below, we find that California lacked jurisdiction to modify the Kansas support order, although it could have enforced the Kansas order.

All preemption arguments are based on the Supremacy Clause of the United States Constitution.

> "The Supremacy Clause gives Congress the power to preempt state law. *Arizona v. United States*, 567 U.S. 387, 398-99, 132 S. Ct. 2492, 183 L. Ed. 2d 351 (2012). When evaluating whether a state law is preempted, '"[t]he purpose of Congress is the ultimate touchstone." *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 223, 11 L.Ed.2d 179 (1963).' *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S. Ct. 1185, 55 L.Ed.2d 443 (1978)." *State v. Garcia*, 306 Kan. 1113, 1117, 401 P.3d 588 (2017).

When Gina and Chris first divorced in 1991, child support modification and enforcement decisions in Kansas were controlled by URESA. See K.S.A. 23-451 et seq. But URESA caused its own problems:

> "Under URESA, a state had jurisdiction to establish, vacate, or modify an obligor's support obligation even when that obligation had been created in another jurisdiction. The result was often multiple, inconsistent obligations existing for the same obligor and

14

injustice in that obligors could avoid their responsibility by moving to another jurisdiction and having their support obligations modified or even vacated. [Citations omitted.]" *Gentzel v. Williams*, 25 Kan. App. 2d 552, 556, 965 P.2d 855 (1998).

So the Kansas Legislature repealed URESA effective July 1, 1995, and replaced it with UIFSA. See K.S.A 23-9,101 (Furse 1995); see also L. 1994, ch. 301, § 86; *Gentzel*, 25 Kan. App. 2d at 555. UIFSA incorporated the idea that only one state at a time could issue orders for child support. 25 Kan. App. 2d at 555-56. UIFSA prevented the possibility of multiple support orders being enforced at one time by using a "continuing, exclusive jurisdiction" provision. See K.S.A. 2019 Supp. 23-36,202; K.S.A. 2019 Supp. 23-36,205.

But California did not replace URESA with UIFSA until January 1, 1998. Cal. L. 1997, Senate Bill 568, ch. 194, § 4. So when the California court modified Chris' Kansas support order on December 26, 1996, URESA was effective in California, but not in Kansas.

Effective October 20, 1994, however, Congress enacted the FFCCSOA. 28 U.S.C. § 1738B (1996 Supp.). The purpose of this Act was:

"(1) to facilitate the enforcement of child support orders among the States;
"(2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and
"(3) to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders." Pub. L. No. 103-383, § 2.

The FFCCSOA required each state to recognize ongoing child support obligations from other states and to modify those obligations only under certain circumstances defined in the statute. "The FFCCSOA's 'bottom line' established that support obligors would no longer be permitted to 'avoid financial responsibilities to their children by moving to

15

another jurisdiction and availing themselves of preexisting legal loopholes caused by disparate state laws.' *Paton, supra,* 104 Ohio App.3d at 832, 663 N.E.2d 421." *State ex rel. Scioto Cty. Child Support Enf't Agency v. Adams*, No. 98CA2617, 1999 WL 597257, at *6 (Ohio App. 1999) (unpublished opinion).

"Courts have found that the FFCCSOA is intended to be consistent with UIFSA. *LeTellier v. LeTellier*, 40 S.W.3d 490, 498-99 (Tenn. 2001) (reviewing the legislative history of FFCCSOA and finding that Congress did not intend to preempt UIFSA)." *In re Marriage of Phillips*, No. 91,917, 2005 WL 475240, at *2 (Kan. App. 2005) (unpublished opinion).

Yet courts have consistently found that the FFCCSOA preempts state law with respect to the modification of child support orders in a URESA enforcement action. See e.g., *In re Marriage of Yuro*, 192 Ariz. 568, 571-72, 968 P.2d 1053 (Ct. App.1998); *State v. Fleet*, 679 So.2d 326, 329 (Fla. Dist. Ct. App. 1996) (FFCCSOA preempts Florida law with respect to modification of orders in URESA enforcement action); *Georgia Dep't of Human Res. v. Deason*, 238 Ga. App. 853, 861, 520 S.E.2d 712 (1999) (trial court erred in ignoring FFCCSOA, which preempted URESA); *Kelly v. Otte*, 123 N.C. App. 585, 589, 474 S.E.2d 131 (1996) (FFCCSOA is "binding on all states and supersede[s] any inconsistent provisions of state law, including any inconsistent provisions of uniform state laws such as URESA."); *Wilkie v. Silva*, 141 N.H. 461, 463, 685 A.2d 1239 (1996) (FFCCSOA preempts New Hampshire law); *Isabel M. v. Thomas M.* 164 Misc. 2d 420, 423-25, 624 N.Y.S.2d 356 (1995) (URESA conflicts with FFCCSOA and is therefore preempted.). "Further, it defies logic to think that the FFCCSOA, given Congress's express findings and declaration of purpose, would exclude orders made under URESA from its scope." *State ex rel. Scioto Cty. Child Support Enf't Agency v. Adams*, No. 98CA2617, 1999 WL 597257, at *8 (Ohio Ct. App. 1999) (unpublished opinion).

16

The California Supreme Court has also found that FFCCSOA preempts URESA. "FFCCSOA . . . preempts California law in a URESA enforcement proceeding and applies to all pending cases." *In re Marriage of Comer*, 14 Cal. 4th 504, 536, 59 Cal. Rptr. 2d 155, 927 P.2d 265 (1996) (Baxter, J., concurring). That decision was filed on December 16, 1996, shortly before the December 26, 1996 modification by the California court in this case. The district court here held that because California had not yet adopted UIFSA, URESA controlled. But the district court failed to recognize that California's URESA had been preempted by FFCCSOA, and that URESA was not substantially similar to UIFSA or FFCCSOA. See K.S.A. 2019 Supp. 23-36,205(c) ("If a tribunal of another state has issued a child support order *pursuant to the uniform interstate family support act or a law substantially similar to that act* which modifies a child support order of a tribunal of this state, tribunals of this state shall recognize the continuing, exclusive jurisdiction of the tribunal of the other state." [Emphasis added.]).

*California lacked jurisdiction to modify the Kansas support order.*

FFCCSOA incorporated the same concept of continuing, exclusive jurisdiction as does UIFSA. See 28 U.S.C. § 1738B. FFCCSOA establishes a general rule requiring a state to enforce the child support order of another state. See 28 U.S.C. § 1738B(a)(1). It further prohibits a state from modifying another state's child support order if the issuing state has "continuing, exclusive jurisdiction" over the matter. See 28 U.S.C. § 1738B (a)(2), (d), and (e). Once a state issues an initial child support order, that state's substantive law governs the order, and the State maintains continuing, exclusive jurisdiction to modify a child support order that it lawfully issued, even if parties filed pleadings in another state. The issuing state retains continuing, exclusive jurisdiction to modify child support orders as long as one of the parties to the order continues to reside in the initiating state, unless all parties file written consent to jurisdiction in another state. As applied here, Kansas retains continuing, *exclusive* jurisdiction to modify child support

17

orders as long as Gina resides here, unless she and Chris both filed written consent to jurisdiction in California.

The FFCCSOA defines the circumstances under which a court of a state may modify a child support order issued by another state:

"A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant or the parties have consented in a record or open court that the tribunal of the State may continue to exercise jurisdiction to modify its order, unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order.

"(e) Authority to modify orders.—A court of a State may modify a child support order issued by a court of another State if—

(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and

(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant and the parties have not consented in a record or open court that the tribunal of the other State may continue to exercise jurisdiction to modify its order; or

(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

. . . .

"(i) Registration for modification.—If there is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification." 28 U.S.C. § 1738B.

18

Under FFCCSOA, "modifications are prohibited unless the exceptions are . . . satisfied." *State v. Fleet*, 679 So.2d 326, 329 (Fla. Dist. Ct. App. 1996). Neither exception is satisfied here. When California purported to modify the Kansas child support order in 1996, Gina and her children remained in Kansas—the issuing state—as they did throughout the underlying proceeding. And no one argues that all the parties filed any written consent in Kansas for California to modify the Kansas orders. See 28 U.S.C. § 1738B(e)(2)(A) and (B). Because Gina is still a resident of Kansas and the parties have not provided written consents for a California tribunal to exercise jurisdiction over the matter, Kansas has had exclusive, continuing jurisdiction over the child support orders since they were issued in 1991. See 28 U.S.C. § 1738B(e)(2)(A). Thus, the Kansas child support orders may be enforced in another state, but they cannot be modified by another state.

"The term 'continuing, exclusive jurisdiction' is used in [UIFSA] to indicate that only one tribunal has jurisdiction to modify a child support order at a time." *Linn v. Child Support Enforcement*, 736 A.2d 954, 959 (Del. 1999) (citing *Gentzel*, 25 Kan. App. 2d 552). Under the applicable provisions of the FFCCSOA and UIFSA—28 U.S.C. § 1738B and K.S.A. 2019 Supp. 23-36,207(b)(1)—only Kansas had and maintained continuing, exclusive jurisdiction over the support order. See *In re Garrett*, 315 B.R. 431, 438 (Bankr. E.D. Tex. 2004) (finding Texas court lacked jurisdiction to modify California support order where mother and minor children never moved from California and the parties did not agree to jurisdiction in Texas). For that reason, the district court erred in finding that the California court had jurisdiction to modify the support order. See Annot. 18 A.L.R. 6th 97, § 33 (2006) (citing multiple cases holding that an issuing state's child support order could not be modified by another state when the custodial parent or the parties' child continued to reside in the issuing state because under FFCCSOA the issuing state retained continuing, exclusive jurisdiction over the order).

19

THE DISTRICT COURT ERRED IN GRANTING GINA'S 2016 MOTION AND IN UPHOLDING ITS PREVIOUS DEFAULT JUDGEMENT.

The parties disagree as to the effect California's lack of subject matter jurisdiction has on later Kansas orders. Chris argues that because the California court lacked jurisdiction to modify the Kansas support order, the California modification that increased his child support amounts is void and Kansas decisions relying on that judgment are also void. Gina raises equitable reasons for not finding the Kansas decisions void. We find, for reasons explained below, that the district court committed reversible error by granting Gina's 2016 motion to determine updated arrearage amounts, adopting the modified California order, and upholding its previous default judgment.

*Standard of review*

A void judgment is one rendered by a court lacking personal or subject matter jurisdiction or acting in a manner inconsistent with due process. *In re Marriage of Hampshire*, 261 Kan. 854, 862, 934 P.2d 58 (1997); *In re Marriage of Myers*, 30 Kan. App. 2d 1223, 1225, 56 P.3d 1286 (2002). A void judgment may be vacated at any time. *Hampshire*, 261 Kan. at 862. Because a judgment is either valid or void as a matter of law, appellate courts have unlimited review. *In re Adoption of A.A.T.*, 287 Kan. 590, 598, 196 P.3d 1180 (2008).

*Effects of the void California judgment*

Because California's modified support order is a void judgment, it cannot be the basis of the court's underlying decisions. A void judgment is an absolute nullity. *Sramek*, 17 Kan. App. 2d 573, Syl. ¶ 2. Yet the district court relied on that order, using it as a basis for its default judgment and arrearage determinations. This was error. See *Garrett*, 315 B.R. at 438 (finding "[b]ecause the August 1996 judgment issued by the Texas court

20

is void for lack of subject matter jurisdiction, it obviously cannot serve as the foundation for the Debtor's objection that all arrearages arising from the California child support decree in favor of the Claimant have been satisfied").

The district court never lost its authority to enforce the Kansas support order. The district court could have ordered Chris to pay the arrearages he had accumulated pursuant to the Kansas order, as long as the parties' children were under the age of 18. But the district court could not rely on the void California modification to determine the amount of Chris' arrearages.

The district court could also have modified the Kansas support order. But it did not do so, having relied on the California modification. Gina argues that she would have moved for modification in Kansas had she known the California modification was void. But we cannot remedy that problem now because child support obligations cannot be modified retroactively. "Instead, a modification of a parent's child support obligation may only operate prospectively because child support payments become final judgments on the dates that they are due and remain unpaid." *In re Marriage of Kallenbach & Hedenkamp*, No. 95,272, 2007 WL 656358, at *4 (Kan. App. 2007) (unpublished opinion).

Gina also argues that Chris should not be able to raise an argument under K.S.A. 2019 Supp. 60-260(b)(5) (providing relief when an earlier judgment has been vacated) because the clean hands doctrine bars his claim. But we need not analyze the clean hands doctrine because Chris does not rely on K.S.A. 2019 Supp. 60-260(b)(5). Instead, he argues that under K.S.A. 2019 Supp. 60-260(b)(4), the district court's decisions were void because they relied on the void California order.

Lastly, Gina argues that the district court properly denied Chris' motion to set aside the default judgment and appropriately granted her 2016 motion to determine

21

arrears. She argues that because the district court reached the correct result, it does not matter that the district court erroneously held that California had jurisdiction to modify the support order under the URESA. True, we can generally uphold a district court's judgment on appeal when the district court reached the correct result, despite its reliance on the wrong reason for its decision. *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019). But we cannot agree that the district court reached the correct result here, when it relied on a void judgment.

## DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING CHRIS' REQUEST FOR SETOFF?

Chris next argues that the district court erred in denying his request for an equitable setoff. He alleges he overpaid his support obligation by $58,745.08 because the proper amount of child support he owed based on the Kansas order is less than the amounts he paid based on the California modification. Chris argues that Gina owes him for this overpayment, yet he acknowledges that he owes Gina for uninsured medical expenses and accrued interest. Gina disputes that Chris has overpaid and argues that he still owes the amounts determined by the district court in its 2018 decision. Gina also argues that Chris' claim should be barred by the clean hands doctrine because Chris has continuously failed to pay his support obligations, incurred arrearages, avoided collection for payment, failed to notify the court of his changes in income and address, and waited an unreasonably long time to seek the district court's review of the issues in his case.

*Standard of review and basic legal principles*

We review the district court's decision about an equitable setoff for an abuse of discretion. *Mynatt v. Collis*, 274 Kan. 850, 863, 57 P.3d 513 (2002). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308

22

Kan. 873, 893, 424 P.3d 515 (2018).

In *Mynatt*, our Supreme Court reviewed the general legal principles for setoffs:

"First, setoff requires mutuality, meaning that the same parties owe a sum of money to each other. There must be at least two distinct debts or judgments that have matured at the time of the motion for setoff. The entities indebted to one another must both be parties to the litigation. In addition, the parties' judgments or debts must coexist, *i.e.,* both must be determined, presently due, and owing at the time of setoff. A district court need not conduct a postjudgment evidentiary hearing unless it is clear mutual coexisting judgments are involved. Further, the party seeking equitable setoff must demonstrate equitable grounds for its application. The setoff must not prejudice intervening rights. Moreover, an equitable setoff will not be upheld on appeal where it contradicts public policy. Finally, equitable setoff is not a legal right, but is a matter of grace, and the question whether a setoff should be decreed rests in the sound discretion of the court to which the application is made." 274 Kan. at 881.

Because equitable setoff is not a legal right, but is a matter of grace, the denial of setoff based on a party's unclean hands is within the discretion of the district court. See *New Dimensions Products, Inc. v. Flambeau Corp.*, 17 Kan. App. 2d 852, Syl. ¶ 5, 844 P.2d 768 (1993).

*The district court did not make adequate findings of fact on this issue.*

In his response to Gina's 2016 motion, Chris argued that he had significantly overpaid his child support obligation. Chris also moved to terminate the income withholding order against him, arguing he should be granted a setoff in the amount of $92,341.

The district court denied Chris' motion as time-barred and generally meritless. But the district court did not make adequate findings of fact to enable us to resolve this claim

23

on appeal. The district court failed to explain why Chris' claim for a setoff was time-barred. And it based its finding that Chris' claim was meritless on the erroneous conclusion that Kansas lost continuing and exclusive jurisdiction to California from 1996 to 2009. The district court did not state an amount by which Chris may have overpaid his support obligation. Because we lack sufficient knowledge of the relevant facts and the equities essential to resolution of this claim, we reverse the district court's denial of Chris' motion for setoff and remand for its further consideration of this claim.

DID THE DISTRICT COURT ERR IN GRANTING GINA'S REQUEST FOR AN INCOME WITHHOLDING ORDER?

Chris argues that if we find the California judgment void, we must order the district court to stop any collection efforts against him. Gina counters that the district court properly denied Chris' motion to stay the income withholding order because Chris presented the district court with a legally invalid reason for a stay.

This question of statutory interpretation presents a question of law over which we have unlimited review. *Nauheim*, 309 Kan. at 149.

Gina correctly shows that because the district court established the amount of child support arrearages in its 2018 decision, the district court was required to issue an income withholding order. See K.S.A. 2019 Supp. 23-3103(a). Under K.S.A. 23-3106(a) the grounds for a stay are limited to "a mistake of fact in the notice concerning the amount of the order for support, the amount of the arrearage, the amount of income to be withheld or the proper identity of the obligor." Yet in his motion, Chris argued none of those—he argued only that the district court's income withholding order would cause him a financial burden. And Chris failed to file an affidavit establishing his income and living expenses as required by Kansas Supreme Court Rule 139(b) (2020 Kan. S. Ct. R. 202). Because Chris failed to meet the applicable statutory provisions, the district court properly denied

24

Chris' motion to stay the income withholding order. The district court may enforce the 1991 Kansas divorce decree as it deems appropriate, basing its ruling upon the 1991 order that Chris pay child support of $226/month from 1991 until June 30, 2009 (plus 50% medical).

But because that withholding order was based on the void California judgment, the withholding order is no longer enforceable. The district court will need to determine on remand the legal appropriateness of enforcing any future income withholding order.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING GINA ATTORNEY FEES.

Chris also appeals the district court's most recent decision to grant Gina reasonable attorney fees.

A district court may award attorney fees to either party as justice and equity requires under K.S.A. 2019 Supp. 23-2715. So we review its decision for an abuse of discretion. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 81, 350 P.3d 1071 (2015); *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013).

As Chris points out, the district court found that it had authority under K.S.A. 2019 Supp. 23-2715 and K.S.A. 2019 Supp. 23-36,313 to award Gina a reasonable amount for attorney fees incurred for representation in this case since November 2014. Chris contends that Gina should not have prevailed on her motion to establish arrears and enforce the California order, so the district court erroneously relied on K.S.A. 2019 Supp. 23-36,313. See K.S.A. 2019 Supp. 23-36,313(b) (permitting reasonable attorney fees to a prevailing party).

25

We find it unnecessary to address that argument because Chris fails to establish that the district court's award was an abuse of discretion under the alternative authority it cited—K.S.A. 2019 Supp. 23-2715. Under that statute, a district court has the authority in a divorce case to award costs and attorney fees to either party if the award is needed to achieve "justice and equity." The district court's 2014 decision required Chris to take further action with regard to the California order. He failed to do so. Gina was compelled to do so only because Chris failed to comply with the district court's order. Under these and other circumstances of record, we find no abuse of discretion in the district court's award to Gina of reasonable attorney fees under K.S.A. 2019 Supp. 23-2715.

### GINA IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL.

Gina recently moved this court to award her $6,400 in attorney fees incurred in responding to Chris' appeal. Chris moved to strike Gina's motion because, among other matters, it failed to comply with Supreme Court Rule 7.07(b)(2) (2020 Kan. S. Ct. R. 50). That Rule requires the movant to attach an affidavit to its motion for fees.

Gina then amended her motion for attorney fees. But her amended motion differed from her original motion only by adding a verification by her attorney, sworn to before a deputy clerk. Chris responded that the amended motion still lacked the necessary affidavit because the verification failed to comply with Supreme Court Rule 7.07(b)(2).

We agree. Supreme Court Rule 7.07(b)(2), a rule of appellate practice, states, as to a motion for attorney fees:

"An affidavit must be attached to the motion specifying:
(A) the nature and extent of the services rendered;
(B) the time expended on the appeal; and

26

(C) the factors considered in determining the reasonableness of the fee. (See KRPC 1.5 Fees.)" Kansas Supreme Court Rule 7.07(b)(2) (2020 Kan. S. Ct. R. 50-51).

KRPC 1.5 (2020 Kan. S. Ct. R. 297) lists eight nonexclusive factors to be considered in determining the reasonableness of a fee.

The fee motion by Gina's counsel fails to include any of the factors that Rule 7.07 requires a party to include in the affidavit in support of a motion for attorney fees. The motion attached a copy of an invoice stating the time expended on the appeal, and arguably, the nature and extent of services rendered. But no affidavit is attached, as is required, listing those matters and the required KRPC 1.5 fee factors. Nor does the attorney's verification of a motion, signed by a deputy clerk, constitute either an affidavit, or a declaration under penalty of perjury, which has the same effect as an affidavit. See K.S.A. 53-601.

Because the amended motion for attorney fees on appeal fails to comply with our rules, we deny it. And we deny as moot the original motion for attorney fees on appeal and the responsive motion to strike that motion.

CONCLUSION

We reverse and remand for further proceedings consistent with this decision.

27